521 A.2d 464

**COMMONWEALTH of Pennsylvania**

**v.**

**Anthony L. ERIE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 3, 1986.

Filed Feb. 17, 1987.

Robert J. Casey, Jr., Philadelphia, for appellant.

John M. Dawson, District Attorney, Meadville, for Com., appellee.

Before CIRILLO, President Judge, and ROWLEY and POPOVICH, JJ.

POPOVICH, Judge:

Appellant, Anthony L. Erie, was convicted by a jury of rape and terroristic threats. After denying post-trial motions, the court sentenced the appellant to concurrent terms of imprisonment of five (5) to ten (10) years on the rape charge and one (1) to two (2) years on the terroristic threats charge.

A notice of appeal to the Superior Court was filed, and appellant's new counsel subsequently filed a motion to remand for a hearing on the issue of ineffective assistance of counsel and supplemental post-trial motions. This court granted appellant's motion and directed the lower court to conduct an evidentiary hearing. The lower court then denied appellant's motion for a new trial, and this appeal followed. After a careful study of the record, we must reverse and remand for a new trial.

On appeal, appellant alleges that trial counsel was ineffective for: (1) failure to preserve the issue of the introduction of evidence for the complainant's motive to fabricate, i.e. the complainant's Juvenile Court record and court orders; (2) failure to object to the introduction of a purported tacit admission by appellant at the time of his arrest; (3) failure to call exculpatory witnesses; (4) stipulation to the testimony of a lab expert regarding evidence of intercourse since it impeached appellant's credibility; and, (5) failure to object to repeated introduction of good character evidence of the complainant.

The standard for evaluating the effectiveness of counsel is set forth in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352–53 (1967):

We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance

tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

■ However, our initial inquiry is whether the issues counsel is charged with not pursuing were of arguable merit. If we conclude that issues were of arguable merit, then and only then do we proceed to inquire whether the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Hubbard*, 472 Pa. 259, 276–79, 372 A.2d 687, 695–96 (1977).

[2] Counsel is presumed to have rendered effective assistance. The burden of proving to the contrary rests with the defendant. *Commonwealth v. Murray*, 338 Pa.Super. 580, 582, 488 A.2d 45, 46 (1985). "Moreover, the courts of this State have repeatedly said that counsel will not be deemed ineffective in the absence of some showing that the defendant was prejudiced by counsel's alleged shortcomings." *Commonwealth v. Litzenberger*, 333 Pa.Super. 471, 482, 482 A.2d 968, 974 (1984).

We look first to appellant's allegation that trial counsel was ineffective for failing to preserve the issue of the introduction of evidence for the complainant's motive to fabricate, i.e. the complainant's Juvenile Court record and court orders. After a careful study of the record, we agree that the issue is of arguable merit.

The record shows that prior to the commencement of trial, the Commonwealth filed a motion in limine, seeking to prevent reference at trial to the complainant's juvenile adjudication as a dependent child. The request was granted by the lower court over the objection of appellant's trial counsel. As a result of the lower court's decision, appellant was unable to cross-examine the complainant regarding her Juvenile Court record, including her relationship with her boyfriend, Ronald Faulk, or introduce copies of the record or court orders for the jury's consideration. Appellant's trial counsel did not raise the issue in his post-trial motions.

The juvenile order in question shows that the complainant was restricted from seeing her boyfriend, Ron Faulk, under certain circumstances and that Juvenile Court had imposed a curfew on her that required her to be home by 11:00 p.m. on Friday and Saturday evenings.

Thus, appellant's new counsel on appeal contends that, had trial counsel been able to present this evidence to the jury, he could have argued that, because the complainant went across the street after 11:00 p.m. at the invitation of appellant to look for his younger brother, went with appellant to the cemetery and did not return home until 3:00 a.m., she was in jeopardy of possible punishment by the court or her family for curfew violation. He could have further argued that the complainant would not only be interested in fabricating the alleged rape in order to avoid such punishment but also to protect her relationship with Mr. Faulk. Instead, when trial counsel asked appellant at trial if he knew of any reason why the complainant would be lying, appellant was unable to produce an answer:

Q. Sixty-four thousand dollar question, if you know the answer; why would this young lady come in here for a day and a half or a day, tell us that you did all of these things, if you know, sir, is she lying?

A. Yes, I don't know what to say to the lady, I don't know.

Q. Can you give this jury one reason why she would lie about this?

A. No, I can't.

(N.T. November 15, 1984, p. 436).

In addition, during his closing argument to the jury, defense counsel was forced to state:

One problem I am going to have, ladies and gentlemen and I will admit it, yes, I don't know, I don't know why, I don't know why her story does not gibe with Tony's. I can't give you motive.

(Closing Argument of Defense Counsel, November 16, 1984, p. 11).

The Commonwealth took advantage of appellant's handicap when it cross-examined the appellant:

Q. Mr. Erie, yesterday you testified in response to a question by your attorney, he said to you, "Mr. Erie, can you think of any reason why Paula Ramey would say these things, would put herself through this, and testify to what she has in this trial and at the preliminary hearing," and your answer was, "I can't say why she would lie," is that correct?

A. That's correct.

(N.T. November 16, 1984, p. 524).

In its Opinion, the lower court held that it used good discretion in excluding the complainant's juvenile file and court orders from the jury's consideration. The lower court stated that it could find "no reason why the adjudication of dependency or the terms and conditions of this Order were matters for the jury's consideration in passing upon the factual situation presented to them." (Opinion, p. 25).

■ We find that the lower court erred in its determination that the complainant's juvenile file and court orders should be excluded from the jury's consideration. In *Davis v. Alaska*, 415 U.S. 308, 320, 94 S.Ct. 1105, 1111–12, 39 L.Ed.2d 347 (1974), the United States Supreme Court ruled that evidence of a motive to fabricate or bias is admissible at trial despite any interest in protecting the privacy of a juvenile. In *Davis*, the prosecution witness testified that he had found abandoned stolen property near his home and reported his findings to the police. He then identified the defendant as the man whom he had seen in the vicinity the night before the discovery of the stolen property. Thus, the defendant sought to impeach the witness by introducing evidence of the witness' juvenile record for burglary and his current probationary status. The defendant argued that, since the stolen property was discovered so close to the witness' home, the witness himself could be considered a suspect. The defendant further argued that the witness would be interested in falsely identifying the defendant in order to shift attention away from himself. The lower

court in *Davis* excluded evidence of a witness' juvenile record, relying on a state statute which prohibited admission of such evidence against the juvenile in subsequent proceedings. In holding the lower court's application of the state statute had violated the defendant's Sixth Amendment right of confrontation, the *Davis* Court ruled:

> The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

*Davis v. Alaska,* supra, 415 U.S. at 315, 94 S.Ct. at 1110, 39 L.Ed.2d at 353.

Moreover, in *Commonwealth v. Black,* 337 Pa.Super. 548, 487 A.2d 396 (1985), this court held in instances where the Rape Shield Law purports to prohibit the admission of evidence which may demonstrate a witness' bias, interest or prejudice or which properly attacks the witness' bias, interest or prejudice or which properly attacks the witness' credibility, the law infringes upon an accused's right of confrontation under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. In *Black,* the defendant was charged with statutory rape and various other charges. On appeal, the defendant successfully challenged the lower court's application of the Pennsylvania Rape Shield Law, 18 Pa.C. S.A. § 3104, which prevented him from introducing at trial evidence of the complainant's prior sexual conduct with one of her brothers, and was granted a new trial. During the original trial, the complainant testified that the defendant, her father, asked her to come into his bedroom and raped her. The defendant confirmed that he was with his daughter in the room but stated that no sexual assault occurred.

The complainant did not report the alleged rape until three months later. At that time, there was an argument between the defendant and one of the complainant's brothers, following which the brother left home. Evidence presented at trial showed that the complainant wanted her brother back home. Other testimony indicated that, once the defendant was arrested and removed from the house, the complainant's brother sought to return home. In his defense, the defendant desired to show, but was erroneously restricted from showing, the complainant's possible bias against him by revealing that the complainant maintained an ongoing consensual sexual relationship with her brother and that the relationship had been terminated by the defendant's dispute with her brother.

In the case at bar, as in *Black*, the complainant and the appellant provided the only direct evidence of what actually happened. Thus, credibility was the key factor since the jury's decision came as the result of whose version they found more believable.

After a careful study of the record, we find a close case. The testimony at trial disclosed the following: At about 11:30 p.m. on June 7, 1984, appellant crossed the street from his home and knocked on the front door of the complainant's, Paula Ramey's, home in order to ask her to help him locate his brother, Dennis Erie. Miss Ramey accompanied the appellant across the street to his house where they waited for Dennis in the yard. The complainant was unaware that appellant had been drinking earlier. He continued to drink while they were in the yard. During this time, the complainant testified appellant made undesired advances including attempts to fondle her and throw her to the ground. Miss Ramey further testified that she was frightened and struggled with appellant. During this time, Paula Ramey's stepmother called her from their home across the street; Dennis Erie passed by them on his way into the house; and, appellant's father passed them in the yard on his way to the store and told Paula that she should go home since her stepmother had been calling her. The complainant testified that she made no attempt to respond

to her stepmother's call or seek the assistance of appellant's brother or father. Instead, the complainant testified that she agreed to walk with appellant to a cemetery which was .7 miles from their homes. There is no evidence that the complainant screamed or protested in order to attract attention during their walk.

In the cemetery, appellant and Miss Ramey engaged in vaginal and oral intercourse. Appellant contended that the complainant consented to have intercourse with him. The complainant claimed that their relations were non-consensual and that she screamed at one time in order to protest and to attract attention. A witness at trial, who had been partying near the cemetery during that time, testified that she heard what she believed to be the scream of a woman in pain or fear. The complainant also testified that, at the conclusion of intercourse, the appellant told her that he would kill her if she told anyone what happened. After leaving the cemetery, appellant and the complainant walked home together.

Upon entering her home at approximately 3:00 a.m., Paula Ramey was met by her stepmother who was upset about her absence. Miss Ramey, upset and not wishing to speak with anyone, fled into the bathroom and did not come out until she spoke with her friend, Ron Faulk. She was taken to the hospital by Mr. Faulk and his father. The examining physician, Dr. Luis Gomez, testified that her injuries were consistent with rape but that it was not a clear case situation as the previous rape case that he had handled.

Appellant, on the other hand, testified that Paula Ramey was not crying when they returned but appeared "happy". He further testified that, when Paula finally gained access to her home (the door was locked), "everybody started raising hell over there." (N.T. November 15, 1984, pp. 429–430).

In the instant case, appellant was prevented by the lower court from showing the existence of a possible ulterior motive on the part of the complainant, which could have caused her to fabricate the alleged rape. Due to the lower court's ban with regard to exposure of Paula Ramey's

Juvenile Court record and court orders to the jury, defense counsel was unable to cross-examine the complainant effectively or introduce copies of the record and court orders for the jury's consideration.

In *Davis v. Alaska,* supra, 415 U.S. at 316–18, 94 S.Ct. at 1110–11, 39 L.Ed.2d at 353–55, the Supreme Court held that cross-examination is very important in that it is the principal means by which the believability of a witness and the truth of his testimony are tested and that, if a defendant is denied the right of effective cross-examination, the result " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Brookhart v. Janis,* 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed. 314." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968).

Based on the facts as presented in the case at bar, we find that defense counsel should have been permitted to expose to the jurors, as the sole trier of facts and credibility, all the facts from which they could appropriately draw inferences relating to the reliability of the complainant, Paula Ramey. This court cannot speculate as to whether the jury, as sole judge of the credibility of a witness in this case, would have accepted defense counsel's theory of the existence of a possible ulterior motive on the part of the complainant, which could have caused her to fabricate the alleged rape, had defense counsel been permitted to present it fully. But, we do conclude that the jurors were entitled to have the benefit of the defense theory before them in order that they could make an informed judgment as to the weight to place on the complainant's testimony as opposed to the appellant's testimony. Based on the limited cross-examination of the complainant that was permitted, the jury might well have thought that defense counsel was engaged in a baseless speculative attack on the credibility of an apparently blameless witness. *Davis v. Alaska,* supra, 415 U.S. at 319, 94 S.Ct. at 1111, 39 L.Ed.2d at 355.

Therefore, since the complainant's Juvenile Court record and court orders should not have been excluded from the jury's consideration at trial under *Davis* and *Black,* we find

that defense counsel was ineffective for failing to raise this matter in post-trial motions. Although defense counsel did raise the issue at pre-trial, during argument on the Commonwealth's motion in limine, he neglected to raise the issue again in post-trial motions, causing the issue to be waived. When questioned at the evidentiary hearing on December 10, 1985, defense counsel stated that his failure to preserve the issue in post-trial motions was an "oversight". (N.T. December 10, 1985, p. 70).

Moreover, since appellant was denied the right of effective cross-examination, the result is a constitutional error of "the first magnitude and no amount of showing of want of prejudice could cure it." *Davis v. Alaska,* supra, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 354. Thus, we find defense counsel clearly ineffective for not pursuing such a serious matter by preserving the issue for appeal by raising it in post-trial motions.

In view of our disposition of this issue, we do not need to address the remaining questions of ineffectiveness of counsel raised in this appeal.

Accordingly, the judgment of sentence of the Court of Common Pleas is vacated, and the case is remanded for a new trial.

Jurisdiction is relinquished.