684 A.2d 561

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert Charles BORING, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 18, 1995.

Filed Aug. 23, 1996.

604

Theodore J. Krol, Assistant Public Defender, Hollidaysburg, for appellant.

Douglas J. Keating, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

Before BECK, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Blair County following appellant's conviction on the charge of murder of the first degree. Herein, appellant contends: 1) The verdict was against the weight of the evidence; 2) The trial court erred in not recusing the Blair County District Attorney's office from prosecuting him; 3) The trial court erred in dismissing defense counsel's motion for change of venue, advancement of the jury pool list and individual voir dire; 4) The trial court erred in permitting Sergeant Donald Hand to testify regarding statements made by appellant because the statements were not revealed to the defense until the day before trial; 5) The trial court erred in not granting a mistrial relative to Commonwealth witness Ronald Isenberg's statement that he took a polygraph test; 6) The trial court erred in precluding defense counsel from impeaching Commonwealth witness Ronald Isenberg; 7) The trial court erred when it prevented James Isenberg from testifying that criminal charges filed against him, where Ronald Isenberg was the key witness, were nolle prosed by the Commonwealth; and 8) The trial court erred in preventing defense witness Ester Updike from testifying as to the character trait of Ronald Isenberg for dishonesty. Having reviewed the record, the parties' briefs and the applicable law, we affirm.

The following is a brief recitation of the pertinent facts in this case: On July 5, 1975, the naked, dead body of victim was found lying on the floor in the living room of her second floor apartment. Following an autopsy, it was determined that victim's death was a homicide. Appellant was questioned by the police about the incident on July 6, 1975, and on November 25, 1975. At this time, appellant was not arrested in connection with the homicide.

Some years later, appellant was in prison awaiting a disposition on a robbery charge. While he was in prison, he told two other inmates, Ronald Isenberg and Thomas Stewart, that he

had murdered victim, but that the police could not prove it. This information was given to the police by Ronald Isenberg and Thomas Stewart. Subsequently, appellant was arrested for the murder of victim and was charged with murder of the first degree. Following a verdict of guilty by a jury, appellant was sentenced to life in prison. Appellant did not file post-sentence motions, but he did file a statement of matters complained of on appeal according to Pa.R.A.P. 1925(b). The trial court affirmed the judgment of sentence, and this appeal followed.[1]

■ Appellant's first contention is that the jury's verdict of guilty was contrary to the weight of the evidence. We are unable to address this issue because appellant has failed to file post-sentencing motions. In *Commonwealth v. Robinson,* 450 Pa.Super. 428, 676 A.2d 249, 250 (1996), this Court specifically held that appellant's claim that the verdict was against the weight of the evidence was not reviewable on appeal where appellant failed to file post-sentencing motions raising the issue. We further stated the following:

This is *not* an issue of waiver. Even though, as a general rule, a defendant need not file a post-sentence motion in order to preserve issues for appellate review, a weight of the evidence argument may be addressed only by the trial court. Therefore, a defendant who wishes to seek a new trial on grounds that the verdict was contrary to the weight of the evidence, must necessarily raise the issue via a post-sentencing motion in the trial court. If the trial court denies the motion, the defendant may then file an appeal in which the trial court's exercise of discretion will be subject to review.

[A] panel of this court has held that, even if the trial court has filed an opinion pursuant to Pa.R.A.P. 1925(a) in which it addresses the weight of the evidence issue, the trial court had no basis upon which to grant a new trial without a

1. We note that this Court filed an opinion concerning this matter on April 2, 1996. Subsequently, appellant petitioned for reconsideration. We granted his petition, and withdrew our opinion filed on April 2, 1996.

motion for a new trial before it. Thus, it could not exercise its discretion in granting or denying same.

*Id.* 676 A.2d at 250 (emphasis added) (citing *Commonwealth v. Holmes,* 444 Pa.Super. 257, 663 A.2d 771 (1995)). *See Commonwealth v. Widmer,* 446 Pa.Super. 408, 667 A.2d 215 (1995). Accordingly, we find appellant's weight of the evidence issue unreviewable on appeal.

■ Appellant's second contention is that the trial court erred in failing to disqualify the entire staff of the Blair County District Attorney's office from participating in his trial. Specifically, appellant alleges that a conflict of interest existed within the district attorney's office during the pendency of his trial. This allegation arises from the fact that at the time the public defender's office began representing appellant, and for numerous months thereafter, Philip Robertson, Esq. was a public defender for the Blair County Public Defender's office. In addition, his wife, Amy Robertson, was the sole investigator for the public defender's office during appellant's preliminary hearing and a substantial period of time prior to his trial. Subsequently, after appellant's preliminary hearing but before his trial, the couple became employed full-time by the Blair County District Attorney's office, and remained employed by the district attorney's office throughout appellant's trial.

It is important to note that while Attorney Robertson was a public defender, he never provided representation to appellant. In fact, there is no evidence that either Attorney Robertson or Investigator Robertson participated in appellant's defense while they were employed by the public defender's office. While they were employed by the public defender's office, the couple did not have contact with appellant's file or with appellant. Moreover, they had only limited contact with the public defender who was representing appellant. In addition, it is undisputed that neither Attorney Robertson nor Investigator Robertson had any contact with appellant's case while they were employed by the district attorney's office.

Appellant urges us to find that there was an "appearance of impropriety" and impute disqualification under Rule 1.10 of the Pennsylvania Rules of Professional Conduct. The particular question in this case regarding the alleged conflict of interest is novel in the appellate courts of Pennsylvania. However, our courts have addressed similar situations.

In *Commonwealth v. Miller*, 281 Pa.Super. 392, 422 A.2d 525 (1980), we considered the conflict of interest problem created when a former public defender joins the district attorney's office and a defendant moves for disqualification of the entire office because a different member of the public defender's office previously represented a co-defendant. We determined that disqualification of the entire office was not necessary because the attorney took no part in the trial of the defendant and had not imparted any information concerning the case to the district attorney or his staff. *Miller*, 422 A.2d at 528. We were "unable to ignore the devastating impact that disqualifying the entire district attorney's office would have if such a broad disqualification were ordered." *Id.* at 529. Rather,

[i]nstead of opting for such an extravagantly indulgent application of the 'appearance of impropriety' standard [encouraged by appellant], ... [we] prefer[ed] ... to rely on the integrity of the district attorneys of this Commonwealth not to participate in the prosecution of cases when such prosecution would generate an appearance of impropriety.

*Id.* at 529.

Similarly, in *Commonwealth v. Harris*, 501 Pa. 178, 460 A.2d 747 (1983), our supreme court relied on *Miller's* rejection of the "appearance of impropriety" standard and declined to disqualify the entire district attorney's office from representing the Commonwealth when the District Attorney, a former Chief Public Defender, had once represented the defendant in a prior Post Conviction Hearing Act appeal. Rather, the court adopted a "more objective and flexible standard" requiring a case-by-case determination of whether the prosecutor engaged in "actual impropriety" causing prejudice to the defendant in situations where the defense attorney enters the

proceedings at the post-trial level and then subsequently joins the prosecutor's office. *Harris, supra.*

█ Recently, in *Euell v. Rosemeyer,* 153 F.R.D. 576 (W.D.Pa.1993), the United States District Court for the Western District addressed a situation similar to that in this case and applied the modern Pennsylvania Rules of Professional Conduct.[2] In *Euell,* defendant filed a motion to disqualify the entire district attorney's office from participating in his habeas corpus action because at trial he was represented by James Vogel, Esq. of the public defender's office, who later became a member of the district attorney's office during defendant's petition for habeas corpus. The federal court denied the defendant's petition.

As the federal court pointed out, "[t]he determination as to whether to disqualify counsel because of a conflict of interest is within the discretion of the [trial] court." *Euell,* 153 F.R.D. at 577. The federal court then analyzed the Pennsylvania Rules of Professional Conduct and determined that "because of the extensiveness of Rule 1.10 and the potentially burdensome effect on the government, the government is much better served ... by the protections stated in Rule 1.11." *Id.* (citation omitted). The court then noted that Rule 1.11 "does not require disqualification of the other lawyers in the agency in which the lawyer in question has become associated." *Id.* at 577 (citation omitted).

Applying the aforementioned rules to this case, we find that the trial court properly refused to disqualify the entire district attorney's office from participating in appellant's case. Here, Attorney Robertson testified that while he was a public defender he had no contact with appellant's file or with appellant. He further testified that he had limited contact with the

---

**2.** The Pennsylvania Rules of Professional Conduct became effective on April 1, 1988. Therefore, while *Miller* and *Harris* are relevant to this case, the courts were not bound at that time by the current rules.

We note that we are not bound by the federal court's conclusions of law in regard to the Pennsylvania Rules of Professional Conduct. *See Commonwealth v. Parker,* 422 Pa.Super. 393, 619 A.2d 735 (1993). However, we find the federal court's reasoning in *Euell* to be persuasive, and, according, we will apply it to this case.

public defender who was representing appellant. In regard to his employment with the district attorney's office, Attorney Robertson testified that he had no contact with appellant's case.

As for Investigator Amy Robertson's career move from the public defender's office to the district attorney's office, there is no indication that she is an attorney, and, thus, her conduct is not governed by the Pennsylvania Rules of Professional Conduct.[3] However, again we note that the record reveals that the investigator had no contact with appellant's case while she was employed by the public defender's office or while she was employed by the district attorney's office.

Accordingly, we find that the trial court did not abuse its discretion when it refused to disqualify the entire staff of the Blair County District Attorney's office from participating in appellant's case.

Appellant's third contention is that the trial court erred in denying defense counsel's pre-trial motion for change of venue, individual voir dire and advancement of the jury pool list because there was extensive pre-trial publicity.[4] Specifically, appellant complains that the trial court did not conduct a hearing or make a ruling on his motion for change of venue and individual voir dire prior to the selection of the jury. We note that appellant has failed to cite any authority regarding his specific contention that the trial court should have held a hearing and made a ruling on his motion prior to the selection

**3.** The Comment to Rule 5.3 of the Rules of Professional Conduct indicates that investigators are not subject to professional discipline. However, it should be noted that Attorney Robertson could be held accountable for the investigator's conduct if the conduct was not compatible with the professional obligations of an attorney. *See* Rules of Professional Conduct, Rule 5.3(a), (b), (c). In this case, we have found that neither Attorney Robertson nor the investigator engaged in conduct which violated the Rules of Professional Conduct.

**4.** We note that appellant has waived the issue concerning the advancement of the jury pool list. Appellant has failed to develop an argument concerning this issue in his brief, and, therefore, we can not undertake meaningful appellate review of this claim. We will not examine bald assertions that the trial court has erred without sufficient proof of abuse of discretion or error of law. *See Hoag v. Hoag,* 435 Pa.Super. 428, 646 A.2d 578 (1994).

of the jury. However, we believe that the trial court did not err in this case.

 First, in regard to the issue concerning appellant's motion for change of venue, it is well-settled that change of venue motions "are addressed to the sound discretion of the trial court and are reviewable on an abuse of discretion standard." *Commonwealth v. O'Kicki,* 408 Pa.Super. 518, 597 A.2d 152, 156 (1991) (citation omitted). Moreover, in delaying his ruling until after voir dire, the trial court was acting under established authority. Our supreme court has said:

> The opportunity to observe the demeanor of the prospective juror and the tenor of the juror's answers is indispensable to the judge in determining whether a fair trial can be had in the community. Claims of impartiality by prospective jurors are subject to scrutiny for credibility and reliability as is any testimony and the judgment of the trial court is necessarily accorded great weight. Impartiality is not a technical concept. It is a state of mind. After the voir dire, a judge can determine which description of the publicity's impact is accurate; before the voir dire a judge could only have guessed.

*O'Kicki,* 597 A.2d at 156 (citations omitted).

 With respect to the underlying merits of appellant's change of venue motion, we note that " 'in reviewing a trial court's decision [as to a change of venue] the only legitimate inquiry is whether any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of pre-trial publicity.' " *Id.* (quoting *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287, 291 (1978)). That is, appellant must show that he would be prejudiced if his motion for change of venue is denied. *Id.*[5]

---

**5.** In some instances it is not necessary for appellant to demonstrate that he was prejudiced by pre-trial publicity in order for his motion for change of venue to be granted. "In certain cases there can be pre-trial publicity so sustained, so pervasive, so inflammatory, and so inculpatory as to demand a change of venue without putting defendant to any burden of establishing a nexus between the publicity and actual jury prejudice." *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287, 291

612

██ Here, by selecting a jury before ruling on appellant's motion, the trial court was able to determine the impact, if any, the pre-trial publicity would have on the case. As later determined, the jurors who were impaneled indicated that they had not heard about the case prior to their selection. Thus, the pre-trial publicity had no impact on the selection of the jury. Accordingly, the trial court did not abuse its discretion when it ruled on the change of venue motion after the jury was selected or when it denied appellant's request for a change of venue.

██ As for appellant's claim regarding his motion for individual voir dire, again we find that the trial court did not err when it denied appellant's motion.

The purpose of voir dire is to ensure a fair, competent, impartial and unprejudiced jury. However, the scope to be allowed each party in exploring the possible bias which may bear on the impartiality of jurors is a matter which rests in the sound discretion of the trial court. Absent palpable error, a trial court's decision in this regard will not be disturbed.

*Commonwealth v. Jones,* 391 Pa.Super. 292, 570 A.2d 1338, 1346 (1990) (citations omitted). Moreover, the existence of some pre-trial publicity does not mandate individual voir dire, and in non-capital cases, such as in this case, there is no absolute right to individual voir dire. *See Commonwealth v. Smith,* 290 Pa.Super. 33, 434 A.2d 115 (1981).

Again, we find that in this case, the trial court's conclusion that individual voir dire was not necessary was not an abuse of discretion and that appellant has failed to show that he was prejudiced when the trial court ruled on his motion after the jury was selected.

██ Appellant's fourth contention is that the trial court erred in permitting Sergeant Donald Hand to testify regarding inculpatory statements made by appellant prior to the autopsy of the deceased. Appellant maintains that Sergeant

(1978) (citation omitted). However, this situation is not present in the case at bar.

Hand's testimony regarding his statements was improperly admitted into evidence because the Commonwealth did not disclose the statements until the day before trial despite the fact that appellant had requested discovery. Appellant argues that the Commonwealth's failure to disclose was in violation of Pa.R.Crim.P. 305 B(1)(b) which mandates discovery of "any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth."

> The Rules themselves contemplate situations where the Commonwealth does not discover evidence pre-trial. Thus, according to Pa.R.Crim.P. 305D, "[i]f prior to or during trial, either party discovers additional evidence . . . which is subject to discovery under this rule . . . such party shall promptly notify the opposing party or the court of the additional evidence. . . ." Moreover, our supreme court in *Commonwealth v. Bonacurso*, 500 Pa. 247, 455 A.2d 1175 (1983), noted that the prevailing view in this Commonwealth is that "the prosecution does not violate discovery rules when it fails to provide the defense with evidence that it does not possess and of which it is unaware during pre-trial discovery. . . ."

*Commonwealth v. Rakes*, 398 Pa.Super. 440, 581 A.2d 212, 214 (1990) (citation omitted).

Here, it is undisputed that the Commonwealth was unaware of the existence of appellant's inculpatory statements made to Sergeant Hand until the day before trial. It is further undisputed that the prosecutor informed defense counsel of the existence of appellant's inculpatory statements made to Sergeant Hand as soon as he became aware of them. Therefore, it is apparent that the Commonwealth complied with the discovery rules. Appellant, nevertheless, alleges that the admission of Sergeant Hand's testimony was unduly prejudicial because counsel did not have the opportunity to contradict his testimony adequately. We disagree.

614 

The record clearly reflects that Sergeant Hand was listed as a Commonwealth witness approximately two months prior to trial, and, consequently, appellant had ample opportunity to interview him. In addition, the record reveals that the statements, which were made by appellant, were disclosed prior to opening statements and several days before appellant presented his case-in-chief. Therefore, appellant was given the opportunity to call witnesses to contradict the sergeant's testimony or to testify himself concerning his alleged statements. Accordingly, we find that appellant was not unduly prejudiced by Sergeant Hand's testimony. Thus, because the Commonwealth promptly disclosed the statements once it discovered them, and because this late discovery did not prejudice appellant, we hold that the trial court properly permitted Sergeant Hand to testify concerning statements made to him by appellant.

 Appellant's fifth contention is that the trial court erred when it failed to grant his request for a mistrial because Ronald Isenberg, a Commonwealth witness, testified that he took a polygraph test. We disagree.

During direct examination of Commonwealth witness Ronald Isenberg, the prosecutor questioned him about his conversation with the police concerning the death of victim. Isenberg testified that he informed Police Chief Cooper that appellant told him that he killed the victim. The prosecutor then asked Isenberg what he did after he spoke with Police Chief Cooper. Isenberg replied, "I went out to the State Police Barracks for a lie detector test, I forget what, polygraph test I'd guess you'd call it." N.T. 3/10/99 p. 630. Defense counsel objected to this statement but did not request a mistrial at this time. The trial court sustained the objection, and the prosecutor continued his direct examination of Isenberg on totally unrelated matters. At the close of the prosecutor's direct examination of Isenberg, and prior to cross-examination, defense counsel requested a mistrial due to Isenberg's reference to the polygraph test. The trial court denied the motion as untimely.

"When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." *Commonwealth v. Meekins,* 266 Pa.Super. 157, 403 A.2d 591, 596 (1979). Pursuant to Pa. R.Crim.P. 1118(b), in order for a motion for a mistrial to be timely, it must be made when the alleged prejudicial event occurs. Here, defense counsel objected to Isenberg's reference to the polygraph test, and the trial court sustained the objection. Defense counsel then attempted to resurrect the error later in the proceedings by making a motion for a mistrial. This motion for a mistrial was interposed a considerable length of time after the allegedly prejudicial reference was made, and after the prosecutor had concluded direct examination of the witness. Accordingly, counsel's untimely request for a mistrial was not before the court properly and hence was not a basis for the granting of a mistrial. *See Commonwealth v. Smith,* 487 Pa. 626, 410 A.2d 787 (1980) (defense counsel requesting mistrial because of witness' reference to polygraph test was untimely when made approximately two or three minutes after the statement was made); *Commonwealth v. Brooks,* 352 Pa.Super. 394, 508 A.2d 316 (1986) (defense counsel's motion for mistrial, made after defense counsel initially objected but then withdrew that objection when court gave curative instruction was untimely, precluding it as basis for appeal).[6]

Appellant's sixth contention is that the trial court erred in precluding defense counsel from impeaching Commonwealth witness Ronald Isenberg regarding unrelated charges filed against his brother, James Isenberg, in 1979, where Ronald was the sole witness for the Commonwealth and the charges were later nolle prossed. We disagree.

"The scope and limits of cross-examination are largely within the discretion of the trial court and its actions

6. We note that appellant argues that the trial court should have *sua sponte* declared a mistrial in this case. Appellant has cited no authority for this proposition and has failed to develop adequately this argument in his brief. Accordingly, it has been waived on appeal. *Hoag, supra; Commonwealth v. Nelson,* 389 Pa.Super. 417, 567 A.2d 673 (1989).

pertaining thereto will not be reversed in the absence of a clear abuse of its discretion or error of law." *Commonwealth v. Buehl,* 510 Pa. 363, 508 A.2d 1167, 1179 (1986) (citation omitted). This Court has held that "[a] witness' credibility cannot be attacked on the basis of prior conduct which is unrelated to the issues at the present trial." *Commonwealth v. Checca,* 341 Pa.Super. 480, 491 A.2d 1358, 1365 (1985) (citations omitted). "The trial court has an obligation to keep the testimony at trial focused on the issues in the trial and to not allow the entry of collateral matters." *Commonwealth v. Tyler,* 402 Pa.Super. 429, 587 A.2d 326, 329 (1991). In addition, we have held that to refuse to allow a defendant to cross-examine a Commonwealth witness regarding false statements allegedly made in an unrelated case is not an abuse of discretion. *Commonwealth v. Fried,* 382 Pa.Super. 156, 555 A.2d 119 (1989).

Here, appellant wished to show that charges brought against James Isenberg in 1979 were nolle prossed because the Commonwealth's sole witness, Ronald Isenberg, was dishonest. However, as the record clearly reflects, it was never established at trial that the charges against James were nolle prossed because Ronald was dishonest. In fact, at trial, there was never any reason provided for the nolle prossing of the charges against James. Moreover, we note that Ronald's prior status as a witness in James' case was irrelevant as to this case. Finally, we find that appellant was permitted extensive cross-examination regarding Ronald's credibility. Under these circumstances, we find no abuse of discretion in the trial court's refusal to allow cross-examination into Ronald's prior status as a witness in an unrelated case.[7] *See Buehl, supra* (refusing to permit defense counsel to cross-examine Commonwealth witness about whether he lied in previous trial not abuse of discretion where it was not established that he had in fact lied in previous trial and was never

7. Appellant further argues that the trial court erred in precluding cross-examination of Ronald Isenberg concerning a statement he made to police in 1989 which was allegedly inconsistent with his testimony at trial. Appellant has cited no authority for this proposition. Accordingly, it has been waived on appeal. *Nelson, supra.*

charged with perjury); *Checca, supra* (appellant offered no evidence that witness was agent of law enforcement authorities, and, therefore, cross-examination regarding this matter was impermissible).

Appellant's seventh contention is that the trial court erred when it prevented James Isenberg from testifying that criminal charges filed against him, where Ronald Isenberg was the Commonwealth's sole witness, were nolle prossed. This was an attempt by the defense to impeach the testimony of Ronald Isenberg through the testimony of James Isenberg. As previously stated, it was never established that the charges filed against James were nolle prossed because of Ronald's alleged dishonesty. In addition, this matter was collateral to the issues at trial. Accordingly, the trial court did not abuse its discretion in preventing James' testimony as to this matter. *Buehl, supra; Checca, supra.*[8]

Appellant's final contention is that the trial court erred when it prevented Ester Updike, a defense witness, from testifying as to the character trait of Ronald Isenberg for dishonesty. Appellant's counsel made an offer of proof at trial that Ester Updike would testify as to the reputation of Ronald Isenberg for honesty and truthfulness. N.T. 3/13/95 pp. 161–162. The trial court permitted appellant's counsel to question the witness in this regard. The following exchange took place between Ester Updike and appellant's trial counsel:

**8.** We note that appellant has cited only one case, *Commonwealth v. Erie*, 361 Pa.Super. 44, 521 A.2d 464 (1987), in support of his argument that James Isenberg should have been permitted to testify concerning the charges which were nolle prossed. In *Erie*, the appellant was prevented from introducing the victim's juvenile file and court dependency orders. We found that this was error because the evidence tended to show the existence of a possible ulterior motive on the part of the victim, which could have caused her to fabricate the alleged rape at issue. Clearly, *Erie* is distinguishable from the present case. Here, whether Robert Isenberg was dishonest in regard to the charges brought against his brother in 1979 did not tend to show the existence of a possible ulterior motive for fabricating his testimony in the present case. Appellant has failed to indicate how Robert's alleged dishonesty in regard to James' case was relevant to this case.

Q. Miss Updike, as you testified, the people you know, in discussions about Ron was his character for honesty ever brought up or discussed?

A. No. Bum's ... you couldn't trust Bum. N.T. 3/13/95 p. 167. Upon objection by the Commonwealth, the trial court sustained the objection and ordered the last response to be stricken from the record. N.T. 3/13/95 p. 167. At a sidebar conference, appellant's counsel indicated that he wished to question Esther Updike about appellant's character for dishonesty. The trial court ruled that the question as to Ronald Isenberg's reputation for honesty encompassed his reputation for dishonesty, and, therefore, appellant's counsel was precluded from further questioning in this regard. Appellant now contends that this was error because there is a distinction between honesty and dishonesty, and that he should have been permitted to question Ester Updike about Ronald Isenberg's reputation as to both traits.[9]

It is well-settled that "[u]nder Pennsylvania law, only evidence of a general reputation for truthfulness in the community is admissible as character testimony." *Commonwealth v. Smith,* 389 Pa.Super. 626, 567 A.2d 1080, 1082 (1989) (citation omitted). Therefore, an individual's opinion as to a witness "character for truthfulness," no matter how well the individual knows the witness, is never admissible in this Commonwealth. *Id.*

Here, Esther Updike clearly testified that she did not discuss Ronald Isenberg's reputation for honesty with others in the community. From this, we find that it was proper for the trial court to determine that this included Ronald Isenberg's reputation for dishonesty as well. In any event, appellant has failed to demonstrate that he was prejudiced by the trial court's refusal to permit appellant to ask Esther Updike about Ronald Isenberg's reputation for dishonesty. *See Smith, supra.*

**9.** Again, we note with disapproval that appellant has failed to provide us with any authority supporting his proposition that the traits of honesty and dishonesty are distinct in this situation.

For all of the foregoing reasons, we affirm the trial court's judgment of sentence.

Affirm.