J-A12013-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| RICKY A. TRIVITT AND APRIL TRIVITT, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| LAURA SERFASS, WILLIAM P. SERFASS, JR. AND KATHY J. SERFASS, | : | |
| | : | |
| Appellees | : | No. 1596 MDA 2014 |

Appeal from the Order September 3, 2014,
Court of Common Pleas, Adams County,
Civil Division at No. 2013-S-873

BEFORE: BOWES, DONOHUE and ALLEN, JJ.

DISSENTING MEMORANDUM BY DONOHUE, J.: **FILED AUGUST 21, 2015**

Based upon the evidence of record, in my view, Appellants satisfied the requirements of **McCreesh v. City of Philadelphia**, 888 A.2d 664 (Pa. 2005): (1) Ramsay Whitworth, Esquire's provision of notice to Scott D. McCarroll, Esquire constituted a good faith effort to notify the defendants of the filing of the complaint, as he reasonably believed Attorney McCarroll represented the Serfass family; (2) there is no evidence that the failure to timely comply with the service requirements of the Rules of Civil Procedure was done with the intent to stall the judicial machinery; and (3) the defendants were not prejudiced by the untimely service, as they promptly began preparing a defense to the claims raised. As I see no basis for "punishing [the] plaintiff for technical missteps where he has satisfied the purpose of the statute of limitations," **id.** at 674, I respectfully dissent.

As the Majority recognizes, our Supreme Court in *Lamp v. Herman*, 366 A.2d 882 (Pa. 1976), put an end to the practice of a plaintiff filing a praecipe for a writ of summons but intentionally not delivering the writ to the Sheriff for service to the defendant until after the expiration of the statute of limitations for the action. *Id.* at 884. Although this practice technically complied with the Pennsylvania Rules of Civil Procedure, the *Lamp* Court found "that there is too much potential for abuse in a rule which permits a plaintiff to keep an action alive without proper notice to a defendant merely by filing a praecipe for a writ of summons and then having the writ reissued in a timely fashion without attempting to effectuate service." *Id.* at 888. The Court stated the reason behind its decision was "to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations." *Id.* at 889. Thus, the Court held that "a writ of summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." *Id.*

A decade later, the Pennsylvania Supreme Court had the opportunity to review the *Lamp* decision in *Farinacci v. Beaver Cnty. Indus. Dev. Auth.*, 511 A.2d 757 (1986). In *Farinacci*, the Court stated that *Lamp* requires that the plaintiff make "a good-faith effort to effectuate notice,"

which must be determined on a case-by-case basis. *Id.* at 759. Based on the facts of that case, the Court found that mere inadvertence by counsel, without more, did not excuse the plaintiff's failure to comply with the service requirements of the Rules of Civil Procedure. *Id.* at 760.

Most recently, our Supreme Court revisited the *Lamp* and *Farinacci* decisions in *McCreesh*. In that case, the plaintiff was injured when a tree growing on the City of Philadelphia's property fell on his truck while he was driving. *McCreesh*, 888 A.2d at 666. He filed a praecipe to issue a writ of summons within the limitations period and attempted to serve the City by sending it to the City's Law Department by certified mail. *Id.* Three months passed with no correspondence between the plaintiff and the defendant, during which time the statute of limitations for the action lapsed. *Id.* Thereafter, the plaintiff filed his complaint and requested the reissuance of the writ, this time properly serving it upon the City's Law Department pursuant to Pa.R.C.P. 400.1 and 402. *McCreesh*, 888 A.2d at 667. The City filed preliminary objections requesting dismissal of the complaint based upon improper service during the limitations period. *Id.*

Our Supreme Court observed that the *Lamp/Farinacci* decisions had spawned two divergent lines of interpretation in the intermediate appellate courts – one demanding strict compliance with the Rules of Civil Procedure to constitute "a good-faith effort to effectuate notice," and the other taking "a more flexible approach" to the good faith requirement. *Id.* at 666. The

*McCreesh* Court adopted the latter line of cases and clarified that the requirement set forth in *Lamp* that the plaintiff make "a good-faith effort to effectuate notice [to the defendant] of commencement of the action" was met where the defendant had actual notice of the action and was not prejudiced by the plaintiff's failure to comply with the service requirements of the Rules of Civil Procedure. *Id.* at 674. It based its decision, in part, upon the "policy considerations that have informed the development of the law in this area":

> We have long recognized that the "purpose of any statute of limitations is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims." *Insurance Co. of N. Amer. v. Carnahan*, 446 Pa. 48, 284 A.2d 728, 729 (1971). To this end, our legislature has enacted statutes of limitations that require actions to be "commenced" within certain time-frames depending on the nature of the underlying claims. *See* 42 Pa.C.S. §§ 5522-30. A matter "is commenced" when a "document embodying the matter" is filed in the appropriate office. *See id.* § 5503. Moreover, the Rules of Civil Procedure promulgated by this Court pursuant to Article V, Section 10(c) of the Pennsylvania Constitution provide that "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint." *See* Pa.R.C.P. 1007.
>
> It is self-evident that once the action has been commenced, the defendant must be provided notice of the action in order for the purpose of the statutes of limitation to be fulfilled. Therefore, this Court has set forth rules governing service of original process to ensure such notice. *See* Pa.R.C.P. 400-430.

**McCreesh**, 888 A.2d at 671.

As the provision of actual notice to the defendants of the commencement of an action satisfies the purpose behind the statute of limitations, the Court found no purpose in dismissing such actions because of the plaintiff's "technical missteps" in failing to properly serve the defendant. **Id.** at 674. The Court thus held that cases subject to dismissal pursuant to **Lamp/Farinacci** should only be dismissed "where plaintiffs have demonstrated an intent to stall the judicial machinery or where plaintiffs' failure to comply with the Rules of Civil Procedure has prejudiced defendant." **Id.** In so holding, our High Court acknowledged that "actual notice may not be absolutely necessary so long as prejudice did not result," but declined to "delineate such an exception," as actual notice was provided to the defendant in the case before it. **Id.** at 674 n.20. Thus, pursuant to **McCreesh**, in order for a court to overlook a plaintiff's failure to timely effectuate service as required by the Pennsylvania Rules of Civil Procedure, (1) the plaintiff must have made a good faith effort to provide notice to the defendant of the suit (which can, but does not have to, be fulfilled by providing the defendant with actual notice); (2) the plaintiff must not have intended to stall the judicial machinery in failing to timely effectuate service; and (3) and the defendant must not have suffered prejudice because of the late service.

The record in the case at bar reflects that Ricky A. Trivitt was allegedly severely injured while riding his motorcycle when he was struck by a vehicle driven by Laura Serfass. Amended Complaint, 11/26/13, ¶¶ 14-15. The Trivitts retained counsel, Attorney Whitworth, who contacted the Serfasses' liability insurer, Pennsylvania National Mutual Casualty Insurance Company ("Penn National"). Plaintiff's Exhibit 1. Penn National retained Attorney McCarroll "for accident reconstruction only" on July 27, 2011. Defendant's Exhibit 13c. At some early point in his representation of Penn National, Attorney McCarroll's role "expand[ed] to include obtaining medical records, information regarding any claimed wage[s] lost, and other general things that an insurance company would typically investigate pre-suit."[1] N.T., 6/13/14, at 53.

Attorneys Whitworth and McCarroll exchanged multiple communications over the succeeding years in the hopes of negotiating a settlement in the matter, during which Attorney McCarroll obtained pertinent information concerning the accident, Mr. Trivitt's injuries, and damages. *See* Plaintiff's Exhibits 4-25. By July 15, 2013, the last day prior to the expiration of the statute of limitations, no settlement was negotiated, and Attorney Whitworth filed a complaint on behalf of Appellants sounding in

---

[1] There was no evidence presented at the hearing to document when this expansion in Attorney McCarroll's role occurred, but the record reflects that as early as October 12, 2011, Attorney McCarroll began requesting this additional information from Attorney Whitworth. *See* Plaintiff's Exhibit 4.

negligence, negligent entrustment and negligent supervision, naming Penn National's insureds – William P. Serfass, Jr., Kathy J. Serfass and Laura Serfass – as defendants. **See generally** Complaint, 7/15/13.

Attorney Whitworth notified Attorney McCarroll of the filing of the complaint on the day he filed it. Plaintiff's Exhibit 26. Attorney Whitworth testified that he believed that Attorney McCarroll represented Appellees at that time. N.T., 6/13/14, at 22-23, 28. Attorney Whitworth asked if Attorney McCarroll would accept service on behalf of the Serfasses, to which Attorney McCarroll responded, "I will check with my client and let you know." Plaintiff's Exhibit 20. Attorney McCarroll emailed Attorney Whitworth the following day and informed him that he could not accept service on behalf of the Serfasses. **Id.** At no time did Attorney McCarroll inform Attorney Whitworth that the Serfasses were not his clients.

Shortly thereafter, Attorney McCarroll obtained a copy of the complaint from the prothonotary, representing that he was doing so as counsel for "the Serfass family."[2] Plaintiff's Exhibit 34. Attorney Whitworth also faxed Attorney McCarroll a copy of the complaint. Plaintiff's Exhibit 31.

---

[2] When testifying at the hearing, Attorney McCarroll explained that his secretary drafted this letter at his request, but he did not instruct her to state that he was acting as counsel for the Serfass family and was unaware that she included this statement in the letter, as he did not review the letter prior to its mailing. N.T., 6/13/14, at 64-65. I disagree with the trial court that Attorney McCarroll's failure to review the letter prior to its mailing absolves him from responsibility of its content. **See** Trial Court Opinion, 9/3/14, at 17 n.7; Pa.R.P.C. 5.3(b) ("a lawyer having direct supervisory

Attorney McCarroll's office contacted Appellees prior to the filing of the complaint. N.T., 6/13/14, at 53. At Attorney McCarroll's direction, his office again contacted Appellees the day after the complaint was filed to "give [them] a heads up that a Sheriff could be showing up at their door to serve them with legal papers," and to ensure that Appellees forwarded Attorney McCarroll a copy of the complaint once the Sheriff served them with it. *Id.* at 57, 87. In the months that followed, Attorney McCarroll met with Appellees in person to discuss their version of the accident and obtained documentation from them about what occurred. *Id.* at 67, 102-03, 112; Plaintiff's Exhibits 35, 38. On the same day that Mr. and Mrs. Serfass met with Attorney McCarroll, Mrs. Serfass began searching for personal counsel to represent Appellees based upon Attorney McCarroll's advice that they retain counsel.[3] N.T., 6/13/14, at 109; Plaintiff's Exhibit 36. Appellees ultimately did retain counsel, informing Attorney McCarroll of the name of the attorney and the law firm at which he was employed. Plaintiff's Exhibit 37. Mrs. Serfass requested that Attorney McCarroll collaborate with

_____

authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer"); *Commonwealth v. Boring*, 684 A.2d 561, 565 n.3 (Pa. Super. 1996).

[3] The record reflects that Penn National did not dispute coverage for any of the claims raised. Appellees conceded this at oral argument. I presume that Appellees retained separate counsel based upon the original demand of $10,000,000 made by Appellants, which is far in excess of the coverage limits under their policy of insurance of $1,250,000. *See* Plaintiff's Exhibit 7; Defendant's Exhibit 6.

Appellees' newly retained counsel, adding that she would prefer that the new attorney not have to review Mr. Trivitt's medical records, but would rely upon Attorney McCarroll's advice as to whether that was "necessary." *Id.* Once the Sheriff served Appellees with the complaint, at the request of Penn National, Attorney McCarroll entered his appearance as counsel for Appellees. Defendant's Exhibit 12a; Entry of Appearance, 11/1/13.

The law is clear that an insured is required to provide prompt notice of an accident to his or her insurance company, inter alia, to allow the insurer to defend the insured against claims arising from the accident. *Gen. Fin. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co.*, 35 A.2d 409, 410 (Pa. 1944). Notice provided by the injured plaintiff to the defendant's insurance company is sufficient to fulfill the insured's obligation. *Nolan v. Koehler & Fretz, Inc.*, 275 A.2d 681, 682 (Pa. Super. 1971). An insurance company has a duty to defend its insured (i.e., provide an attorney to represent the insured) for all claims arising out of an accident for which there is even the potential for coverage under the policy of insurance until it is clear that there is no coverage for any recovery sought. *Selective Way Ins. Co. v. Hospitality Grp. Servs., Inc.*, __ A.3d __, 2015 WL 4094398, **8-9 (Pa. Super. July 7, 2015).

When an insurance company hires a lawyer to defend its insured in a third party's action, the attorney-client relationship exists between the attorney and the insured despite the fact that the insurance company is

paying the attorney. *See Eckman v. Erie Ins. Exch.*, 21 A.3d 1203, 1209 (Pa. Super. 2011); *see also Point Pleasant Canoe Rental, Inc. v. Tinicum Twp.*, 110 F.R.D. 166, 170 (E.D. Pa. 1986) ("When a liability insurer retains a lawyer to defend an insured, the insured is considered the lawyer's client."). The insurance company, however, "control[s] the defense[.]" *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, ___ A.3d ___, 2015 WL 4430352, *10 (Pa. July 21, 2015) (quoting *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 2 A.3d 526, 545 (Pa. 2009)).

In the case at bar, although Attorney McCarroll may not have formally represented Appellees prior to the effectuation of proper service of the complaint, the record supports a finding that Attorney Whitworth reasonably believed that he did.[4] Attorney McCarroll's response to Attorney Whitworth's

---

[4] Based upon the trial court's credibility determinations, the record supports the trial court's conclusion that Attorney McCarroll was not serving as counsel for Appellees prior to Attorney Whitworth effectuating proper service upon Appellees. Trial Court Opinion, 9/3/14, at 15-16; *see Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. 2004) (indicating that the question of whether an attorney-client relationship exists is a question of fact that cannot be disturbed if the evidence of record supports the factfinder's conclusion). I note, however, that the record also amply supports the opposite conclusion. *See, e.g.,* N.T., 6/13/14, at 109; Plaintiff's Exhibit 36 (Attorney McCarroll advised Appellees to retain additional, independent counsel following the filing of the complaint); Plaintiff's Exhibit 20 (email from Attorney McCarroll stating that he consulted his "client" and indicating that he was given authority to reject service of the complaint); Plaintiff's Exhibit 37 (email from Mrs. Serfass to Attorney McCarroll reflecting that Appellees were relying upon Attorney McCarroll's advice as to whether their personal counsel needed to review Mr. Trivitt's

- 10 -

request that Attorney McCarroll accept service of the complaint on behalf of the Serfasses was that he would "check with his client." Plaintiff's Exhibit 20. Pursuant to Rule 402 of the Pennsylvania Rules of Civil Procedure, only the Serfasses could authorize Attorney McCarroll to accept service on their behalf. *See* Pa.R.C.P. 402(a)(2)(iii) (permitting service to be effectuated by handing a copy of the complaint to the defendant's agent).

Furthermore, Penn National had a duty to defend its insured and, as stated above, it controlled the defense, including who would represent Appellees. Prior to the filing of the complaint, Attorney McCarroll obtained from Attorney Whitworth all of the documentation related to the cause of action and entertained (and rejected) offers to settle the case made by Attorney Whitworth. Attorney McCarroll never informed Attorney Whitworth that he did not represent the Serfasses.

---

medical records); Defendant's Exhibit 6 (Attorney McCarroll rejected Appellants' policy limits demand). Moreover, I disagree with the trial court that Attorney Whitworth's act of drafting, but not sending, a letter to Appellees on July 30, 2013, which letter would have advised Appellees of the filing of the complaint, but did not indicate that a copy would be sent to Attorney Whitworth, leads to the "unavoidable conclusion" that Attorney Whitworth was aware that Attorney McCarroll did not represent Appellees at that time. *See id.* at 17; Plaintiff's Exhibit 29. Attorney Whitworth testified that although he originally believed he sent the letter to Appellees, he realized that he did not do so "because they were represented by [Attorney] McCarroll," and Attorney Whitworth instead sent a copy of the complaint directly to Attorney McCarroll. N.T., 6/13/14, at 19, 34. The trial court states that it "has no reason to question the professional ethics of Attorney Whitworth," and therefore could not have found that he lied under oath while testifying at the hearing. *See* Trial Court Opinion, 9/3/14, at 17.

- 11 -

The record also reflects that Attorney Whitworth authored a letter to the Serfasses on July 30, 2013, informing them that the complaint had been filed. Plaintiff's Exhibit 29. He testified, however, that he did not send the letter because he believed the Serfasses were represented by Attorney McCarroll and it would have been a violation the Rules of Professional Conduct to communicate with a represented party. N.T., 6/13/14, at 19, 34; *see* Pa.R.P.C. 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). Attorney Whitworth testified that he instead sent a copy of the complaint directly to Attorney McCarroll. N.T., 6/13/14, at 34.

It has long been held that "[s]ervice of process is for the purpose of notifying a defendant of the claim or charge against him so that he may properly prepare himself to answer it." *Vaughn v. Love*, 188 A. 299, 301 (Pa. 1936); *see also Lamp*, 366 A.2d at 893 ("The purpose of a writ of summons is twofold: (1) it enables the court to obtain jurisdiction over the defendant who is served, and (2) it gives the defendant notice that he is before the court and must prepare to defend an action."). As the above summary reflects, following his receipt of the complaint, Attorney McCarroll began preparing a defense on Appellees' behalf. Attorney McCarroll promptly scheduled a meeting with Appellees so that they could relay to him

their version of the event in question, Appellees provided relevant documentation to Attorney McCarroll, Attorney McCarroll obtained documents relevant to the claims made by Mr. Trivitt from Appellants, and Appellees even retained separate counsel to represent them upon the advice of Attorney McCarroll. Indeed, by the time he entered his appearance on Appellees' behalf, Attorney McCarroll had all of the information he needed to effectively prepare a defense for Appellees in the lawsuit, as he had proceeded after the filing of the complaint as though service of the action had been perfected. There is nothing that would support a finding that Appellees' ability to defend themselves in Appellants' cause of action was in anyway compromised by Appellants' failure to timely comply with the service requirements of the Rules of Civil Procedure.

Thus, as stated above, based upon the evidence of record I would conclude that Appellants satisfied the requirements of **McCreesh**: (1) Attorney Whitworth's provision of notice to Attorney McCarroll constituted a good faith effort to notify the defendants of the filing of the complaint, as he reasonably believed Attorney McCarroll represented the Serfass family; (2) there is no evidence that the failure to timely comply with the service requirements of the Rules of Civil Procedure was done with the intent to stall the judicial machinery; and (3) the defendants were not prejudiced by the untimely service, as they promptly began preparing a defense to the claims raised. I therefore see no basis for "punishing [the] plaintiff for technical

missteps where he has satisfied the purpose of the statute of limitations[.]" **McCreesh**, 888 A.2d at 674.

The Majority states that "notice to an insurance company's lawyer of the filing of original process is insufficient to toll the statute of limitations when there has been no good faith effort to serve process on the actual defendants." Maj. at 15 (citing **Cahill v. Schults**, 643 A.2d 121 (Pa. Super. 1994); **Schriver v. Mazziotti**, 638 A.2d 224 (Pa. Super. 1994); **Ferrara v. Hoover**, 636 A.2d 1151, 1153 (Pa. Super. 1994)). My review of the cases upon which the Majority relies reveals that they do not stand for the stated proposition. Rather, all three cases address the situation where the plaintiff provided notice to solely to an insurance **adjuster**, not an insurance company's **attorney**.[5] *See Cahill*, 643 A.2d at 125; **Schriver**, 638 A.2d at

---

[5] The cases upon which the Majority relies all pre-date our Supreme Court's decision in **McCreesh v. City of Philadelphia**, 888 A.2d 664 (Pa. 2005), wherein our Supreme Court held that the requirement that the plaintiff make "a good-faith effort to effectuate notice [to the defendant] of commencement of the action" was met where the defendant had actual notice of the action and was not prejudiced by the plaintiff's failure to comply with the requirements of the Rules of Civil Procedure. *Id.* at 674. The **McCreesh** Court expressly rejected the other line of cases from the Commonwealth and Superior Courts that required strict compliance with the Rules of Civil Procedure in order to find that the plaintiff made a good faith effort to provide the defendant with notice of the suit. *Id.* My review of **Cahill**, **Schriver** and **Ferrara** reveals that they fall within the latter, rejected line of cases. *See Cahill*, 643 A.2d at 123 ("At a minimum, the good faith requirement in **Lamp** mandates *compliance with the Pennsylvania Rules of Civil Procedure and, importantly, local practice*") (emphasis supplied); **Schriver**, 638 A.2d at 226 (same); **Ferrara**, 636 A.2d at 1152 (finding that the failure of the plaintiff to "take any affirmative action to see that the writ was served," and instead relying upon local practice in his

- 14 -

226-27; *Ferrara*, 636 A.2d at 1153. Furthermore, the basis for my disagreement with the Majority is not that Appellants provided notice of the filing of the complaint to Attorney McCarroll in his role as attorney for Penn National, but that Appellants provided notice to Attorney McCarroll based upon Attorney Whitworth's mistaken, but reasonable, belief that Attorney McCarroll was the attorney for Appellees at that time. In my view, this constituted a good faith effort by Appellants to provide notification of the filing of the complaint. As such, even if these cases held as the Majority claims, they would be inapposite to the case before us.

Pursuant to my review of the applicable law and the policy considerations attendant thereto, I would reverse the decision of the trial court and remand the case for further proceedings. I therefore respectfully dissent.

---

county to serve the defendant with notice did not meet *Lamp*'s "good faith" requirement). As such, these decisions have questionable precedential value on the issue before this Court.