J-S39021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD WAYNE BOWMAN | : | |
| | : | |
| Appellant | : | No. 578 MDA 2022 |

Appeal from the PCRA Order Entered March 22, 2022
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000090-2018

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD WAYNE BOWMAN | : | |
| | : | |
| Appellant | : | No. 579 MDA 2022 |

Appeal from the PCRA Order Entered March 22, 2022
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000400-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MARCH 09, 2023**

Appellant, Donald Wayne Bowman, appeals from the post-conviction court's March 22, 2022 orders denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  On appeal, Appellant primarily raises claims challenging the effective assistance of his trial counsel. After careful review, we affirm.

On direct appeal, this Court summarized the facts of Appellant's case as follows:

> On December 23, 2016, the victims, Brenda Younkin ("Younkin") and Megan Byrnes ("Byrnes"),[1] were traveling southbound on Coudersport Pike, in Lock Haven, Pennsylvania, when Appellant, who was traveling northbound on the same road, veered into their lane and crashed head on into their vehicle. Upon arrival to the scene of the accident, Corporal Jeffrey Hildebrand observed that Appellant exhibited signs of intoxication. Both Younkin and Byrnes suffered serious injuries as a result of the accident.
>
> [1] Byrnes's minor son was also in the vehicle.

*Commonwealth v. Bowman*, No. 352 MDA 2020, unpublished memorandum at *1-2 (Pa. Super. filed Jan. 7, 2021).

Appellant was arrested and charged with various offenses in two separate cases that were consolidated before trial. On October 3, 2019, he proceeded to a jury trial, at the close of which he was convicted of two counts of aggravated assault by vehicle while driving under the influence (DUI), 75 Pa.C.S. § 3735.1(a), aggravated assault by vehicle, 75 Pa.C.S. § 3732.1, DUI-general impairment, 75 Pa.C.S. § 3802, careless driving, 75 Pa.C.S. § 3714(a), and reckless driving, 75 Pa.C.S. § 3736. He was sentenced on December 6, 2019, to an aggregate term of 54 to 136 months' incarceration. He filed a timely notice of appeal, and this Court affirmed his judgment of sentence on January 7, 2021. *See id.* Appellant did not file a petition for allowance of appeal to our Supreme Court.

On August 13, 2021, Appellant filed a timely, counseled PCRA petition. The court thereafter conducted an evidentiary hearing and, on March 22,

2022, it issued an order denying Appellant's petition. He filed a timely notice of appeal at each of his two, separate docket numbers, and this Court thereafter consolidated his appeals *sua sponte*.

Herein, Appellant states five issues for our review:

I. Whether the PCRA court committed reversible error by denying [Appellant's] PCRA claim that trial counsel was ineffective for stipulating to the [blood alcohol content (BAC)] results, where such stipulation admitted a central element of the DUI charges and therefore failed to require the Commonwealth to prove an important element of its case, which had a spillover effect on the other charges?

II. Whether the PCRA court committed reversible error by denying [Appellant's] PCRA claim that trial counsel was ineffective for stipulating to the BAC evidence when he apparently misunderstood its import on the introduction of the Commonwealth's expert witness testimony from its forensic toxicologist?

III. Whether the PCRA court committed reversible error by denying [Appellant's] PCRA claim that trial counsel was ineffective for failing to file a motion to recuse the Clinton County District Attorney's office and/or failing to request that the trial court conduct an inquiry into an actual or potential conflict with the district attorney's office when his prior attorney in the case withdrew to join the same district attorney's office prosecuting him?

IV. Whether the PCRA court committed reversible error by denying [Appellant's] PCRA claim that trial counsel was ineffective for providing deficient advice regarding accepting an advantageous plea agreement?

V. Whether the PCRA court committed reversible error by denying [Appellant's] PCRA claim that his due process rights to a fair trial were violated when the court failed to dismiss the jury panel after prejudicial unsworn statements by a potential juror irretrievably tainted the impartiality of the jury?

Appellant's Brief at 4-5 (unnecessary capitalization omitted).

Before delving into Appellant's issues, we note that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Johnson**, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first contends that his trial counsel, Patrick Johnson, Esq., acted ineffectively by stipulating that Appellant had a BAC that was .15%, which was almost twice the legal limit. Appellant maintains that counsel's

stipulating to his BAC level essentially conceded Appellant's guilt to the DUI-general impairment charge he faced, and it also admitted an essential element of the charge of aggravated assault while DUI.

At the PCRA hearing, Attorney Johnson testified that his strategy in stipulating to Appellant's BAC was two-fold. *See* N.T. PCRA Hearing, 12/2/21, at 22. First, he "didn't want to call the jury's attention to it" by having the jury hear hours of evidence regarding Appellant's high level of intoxication. *Id.* Instead, counsel wanted the jury to "pay attention to … the circumstances of the accident" rather than "fixating" on Appellant's high BAC and the victims' injuries. *Id.* Second, Attorney Johnson testified that he believed that, in exchange for the BAC stipulation, the Commonwealth would not call several expert witnesses to the stand, including the phlebotomist, a chain of custody expert, and the toxicologist. *Id.* at 23. However, despite the stipulation, the Commonwealth still called the toxicologist to the stand in order to present his expert opinion that a person with a .15% BAC would be unable to safely operate a motor vehicle. *See* N.T. Trial, 10/3/19, at 131.

On appeal, Appellant claims that Attorney Johnson's "gloss over approach" to his BAC was "plainly deficient," as it "was simply impossible" to "avoid[] the elephant in the room" of Appellant's intoxication. Appellant's Brief at 20. He further contends that counsel's strategy of stipulating to the BAC was unreasonable, where the toxicologist still testified.

We disagree. Attorney Johnson reasonably sought to minimize the discussion of Appellant's high level of intoxication by stipulating to his BAC

rather than exposing the jury to multiple witnesses and lengthy testimony on that issue. While the Commonwealth still called its toxicology expert to opine on Appellant's ability to safely operate a vehicle with a BAC of .15%, the Commonwealth did not call the phlebotomist or chain of custody clerk, thereby limiting the amount of testimony concerning Appellant's BAC. Accordingly, we conclude that counsel expressed a reasonable basis for deciding to stipulate to Appellant's BAC.

We also note that Appellant offers no discussion of how he was prejudiced by Attorney Johnson's stipulation. Presumably, even had counsel not stipulated to Appellant's BAC, the Commonwealth would have been able to prove his BAC through the testimony of the toxicologist and/or other witnesses. Moreover, as this Court observed on direct appeal, the Commonwealth presented an "overwhelming body of proof" of Appellant's guilt at trial. *Bowman*, 352 MDA 2020, unpublished memorandum at *12. In regard to Appellant's level of intoxication, we noted that:

> [An eyewitness to the accident, Sharon] Cryder[,] testified that she detected alcohol emanating from Appellant and that he appeared intoxicated. N.T. Trial at 36. Corporal Hildebrand testified that Appellant "smelled very, very strongly of alcoholic beverages," that Appellant's speech was slurred, Appellant's eyes were "red, glassy and bloodshot," and that Appellant "was staggering and swaying" and "unsure of his footing." *Id.* at 49-50. Corporal Hildebrand also testified that, in his opinion, Appellant was "impaired" and "incapable of safe driving on the night of the accident." *Id.* at 54-55.

*Id.* at *12 n.11. Given this evidence of Appellant's intoxication, and the likelihood that the Commonwealth could have presented other proof to

establish Appellant's exact BAC, we conclude that Attorney Johnson's stipulating to Appellant's BAC was not prejudicial. Thus, Appellant's first ineffectiveness claim is meritless.

Next, Appellant contends that Attorney Johnson was ineffective for not objecting to the testimony of the Commonwealth's toxicologist on the basis that it violated Appellant's agreement to stipulate to his BAC. Just before the toxicologist testified, the following sidebar discussion occurred:

> [Attorney Johnson]: My understanding of the stipulation was that we were going to stipulate to the [BAC] and that was going to the be the extent of the toxicology. We stipulate to that, they don't call the toxicology expert, they don't call the phlebotomist. Now they're calling the toxicologist. I'm just pointing out that was not my understanding of the stipulation.
>
> THE COURT: [Commonwealth,] where are you headed with this witness?
>
> [The Commonwealth]: Just … that he would testify [that] at that rate[,] somebody would be impaired.
>
> THE COURT: Okay.
>
> [Attorney Johnson]: I thought that's what we were getting away from when we stipulated to the BAC.
>
> THE COURT: Well the – I can't speak to your subjective understanding, but the stipulation was to the BAC.
>
> [Attorney Johnson]: Okay.

N.T. Trial at 126.

Appellant now claims that Attorney Johnson should have formally objected to the testimony of the toxicologist. Appellant stresses that, at the PCRA hearing, counsel conceded that "had he known [the toxicologist's]

- 7 -

testimony was coming in[,] he would likely not have stipulated to the BAC."
Appellant's Brief at 24 (citing N.T. PCRA Hearing at 26).

Initially, in the portion of Attorney Johnson's testimony cited by
Appellant, the following exchange occurred:

> Q[:] And if you had known that [the toxicologist's] testimony was
> coming in, would you have still stipulated to the BAC?
>
> [Attorney Johnson:] That's a good question. … [F]rom the
> beginning, I had wanted to avoid the topic of the DUI as much as
> I could, so **I guess I can't answer that question**. I can tell you
> that my understanding that he would not was certainly a strong
> reason why I did that.

N.T. PCRA Hearing at 26 (emphasis added). Contrary to Appellant's
characterization on appeal, counsel did not say that he would "likely not" have
stipulated to the BAC had he known the toxicologist would testify anyway.
Appellant's Brief at 24. Instead, Attorney Johnson testified that he could not
answer that question.

Moreover, Appellant once again offers no discussion of how he was
prejudiced by counsel's failure to formally object to the toxicologist's
testimony. Even without the toxicologist's opinion that a BAC level of .15%
would render a person incapable of safely operating a motor vehicle, the
Commonwealth had other evidence demonstrating that Appellant was
intoxicated. Namely, Sharon Cryder and Corporal Hildebrand testified that
Appellant was visibly intoxicated, was slurring his speech, had glassy and
bloodshot eyes, and was staggering and swaying. Corporal Hildebrand
testified that Appellant was impaired to the point of being incapable of safely

driving. Thus, Appellant has not proven that he was prejudiced by the admission of the toxicologist's cumulative testimony. Additionally, for the reasons stated *supra*, Appellant has not established that the outcome of the proceeding would have been different had Attorney Johnson not stipulated to his BAC. Thus, his second ineffectiveness claim warrants no relief.

Next, Appellant argues that Attorney Johnson was ineffective for failing to file a motion to recuse the Clinton County District Attorney's Office (hereinafter "DA's Office"), and/or failing to request that the trial court conduct an inquiry into whether there was an actual or potential conflict with that office's prosecuting Appellant. The basis for Appellant's allegation of a conflict is the fact that his initial trial counsel in this case, Thom Rosamilia, Esq., sought to withdraw after he had represented Appellant during "critical stages of the prosecution[,] … including multiple preliminary hearings, the filing of multiple pre-trial motions, and pre-trial hearings." Appellant's Brief at 28. Attorney Rosamilia then "assumed a position as a part-time district attorney" with the DA's office and Attorney Johnson was appointed to represent Appellant. *Id.* at 9.

Appellant contends that Attorney Johnson acted ineffectively by not filing a motion to recuse the DA's Office from prosecuting him where there was clearly an appearance of a conflict based on Attorney Rosamilia's employment with that office after representing Appellant. *Id.* at 27-28. Alternatively, Appellant claims that Attorney Johnson should have at least requested that the court inquire into whether a conflict existed under these

circumstances. *Id.* at 28. Appellant concedes that "[t]he testimony presented at the PCRA hearing established … that there were no discussions amongst [Attorney] Rosamilia and the [DA's] Office about [Appellant's] case." *Id.* at 30. He complains, however, that he only learned this "after the fact" and, "at the time it mattered most to [Attorney Johnson] and [Appellant], the appearance of a conflict existed and something more was required than simply ignoring it." *Id.*

Appellant's argument is unconvincing. This Court has explained:

Where an actual conflict of interest exists, the defendant is entitled to have the conflict removed without any further showing of prejudice. On the other hand, a mere allegation or appearance of impropriety is insufficient to establish an actual conflict of interest.

The mere fact that an attorney or employee of the [Public Defender's (PD)] Office has moved to the DA's Office does not necessarily compel disqualification of the entire DA's Office. Rather, courts will look closely at the specific facts of the case and any remedial measures to determine whether any actual conflict of interest exists. ***Commonwealth v. Faulkner,*** … 595 A.2d 28, 38 ([Pa.] 1991) (no conflict of interest where DA's Office hired the defendant's private investigator, where the investigator did not actually speak to anyone in the DA's Office about the defendant's case), *cert. denied,* 503 U.S. 989… (1992); ***Commonwealth v. Harris,*** … 460 A.2d 747, 749 ([Pa.] 1983) (no conflict of interest where Chief Public Defender, who did not represent defendant at trial, became DA at the time that defendant filed post-conviction relief petition); ***Commonwealth v. Boring***, … 684 A.2d 561, 564-[]65 ([Pa. Super.] 1996) (no conflict of interest where attorney and investigator for PD's Office joined the DA's Office, because they did not work on defendant's case in either office)…; ***see also, Commonwealth v. Ford***, 650 A.2d 433, 443 ([Pa.] 1994) (no conflict of interest where defendant's trial judge became DA of the county while defendant's case was pending, because DA "disqualified and screened herself from any participation" in the case after becoming DA), *cert. denied,* 514

U.S. 1114 … (1995).  Our Supreme Court has recognized the "enormous burden upon the already strained resources of the District Attorney's staff" that would result if the Court allowed disqualification based on a "mere assertion of impropriety." *Harris*, 460 A.2d at 750.

*Commonwealth v. Sims*, 799 A.2d 853, 856–57 (Pa. Super. 2002) (some internal citations omitted).

Here, there is no support in the record for Appellant's allegation that the entire DA's Office had a conflict of interest that warranted its removal from his prosecution.  At the PCRA hearing, Attorney Rosamilia testified that when he started working for the DA's Office, he was told he would "have nothing to do with [Appellant's] cases."  N.T. PCRA Hearing at 73.  He stated that he never had any "substantive discussions" about Appellant's cases with anyone in the DA's Office, and he did not handle any aspect of the cases.  *Id.*  While counsel admitted there was not a "written policy … in terms of … a firewall" between himself and Appellant's prosecution, nothing in the record suggests that Attorney Rosamilia was in any way involved in the handling of Appellant's cases.  *Id.*

Attorney Rosamilia's testimony makes this case distinguishable from a decision on which Appellant relies, *Commonwealth v. Ford*, 122 A.3d 414 (Pa. Super. 2015).  There, this Court remanded for a hearing to determine if the trial court should have ordered the recusal of the entire Clinton County DA's Office based on Ford's former counsel's employment with that office.  *Id.* at 418.  In reaching this decision, we stressed that the "[t]he record [did] not

indicate whether [Ford's former counsel] disclosed confidential information to other members of the Clinton County District Attorney's Office." ***Id.***

Here, in contrast, Attorney Rosamilia testified that he had no discussions about Appellant's cases with anyone in the DA's Office. Thus, the evidence demonstrates there was no actual conflict, and Appellant was not prejudiced by Attorney Johnson's failure to pursue the DA Office's recusal from his prosecution.

In Appellant's fourth issue, he argues that Attorney Johnson was ineffective for "providing deficient advice regarding [Appellant's] accepting an advantageous plea agreement…." Appellant's Brief at 33 (emphasis omitted). Appellant explains that, prior to trial, the Commonwealth offered him a sentence of 9 to 23 months' incarceration if he pled guilty to the aggravated assault by vehicle charges, with the remaining charges being dismissed. ***See*** N.T. PCRA Hearing at 11. Appellant acknowledges that Attorney Johnson "advised [Appellant] that he should take the offer…." ***Id.*** at 35. He complains, however, that counsel ineffectively told him that he "had a shot" of winning if he went to trial, despite counsel's knowledge that "[t]here was a mountain of threatening evidence against" Appellant. ***Id.*** Appellant also insists that counsel "did not review the full scope of his sentencing exposure" or the "full ramifications if [Appellant] lost at trial…." ***Id.*** at 36. Based on Attorney Johnson's "unreasonably positive prognosis about [Appellant's] chances of winning at trial[,]" and his failure to fully advise Appellant of the consequences if he proceeded to trial and lost, Appellant rejected the favorable plea deal.

- 12 -

Appellant now maintains that counsel's advice surrounding the plea was ineffective.

Preliminarily, we have observed that,

a post-conviction petitioner seeking relief on the basis that ineffective assistance of counsel caused him or her to reject a guilty plea must demonstrate the following circumstance:

[B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (citation omitted).

Instantly, Appellant asserts that, but for Attorney Johnson's telling him he had a chance to win at trial and failing to fully advise him of the consequences of proceeding to trial, he would have accepted the plea offered by the Commonwealth. The record does not support Appellant's claim. Attorney Johnson testified at the PCRA hearing that he conveyed the Commonwealth's plea offer to Appellant "[m]any times" throughout his representation of Appellant, and again on "[t]he morning of trial." N.T. PCRA Hearing at 11, 12. Counsel believed the plea offer was favorable, and conveyed that fact to Appellant "[m]any times." *Id.* at 12. Attorney Johnson testified that on the night before trial, he met with Appellant and "again

- 13 -

reinforced [his] opinion that … [Appellant] should take the plea deal…." *Id.* at 15.

Attorney Johnson testified that while he could not specifically recall the exact conversations he had with Appellant, it is his standard practice to discuss the sentencing guideline ranges, and the prospect of consecutive and concurrent terms. *Id.* at 16. Thus, he was "sure he went over the standard … ranges" of Appellant's potential sentences and "what would happen if he lost" at trial. *Id.* at 15-16. Attorney Johnson testified that he repeatedly told Appellant that there would be "a significant penalty if he were to lose at trial." *Id.* at 16-17. Attorney Johnson also believed that he had advised Appellant that if he lost at trial, he "would be looking at a state sentence[.]" *Id.* at 19.

Attorney Johnson further testified that he and Appellant had "talked [at] length" about the likelihood of Appellant's winning if he went to trial. *Id.* at 17. Counsel stated that he told Appellant that "he had a shot" based on the possible defense "that the other vehicle came into his lane and that he essentially had gone … to the left of that vehicle in an effort to miss them." *Id.* at 17, 20. However, Attorney Johnson stressed that he advised Appellant "numerous times in the month leading up to the trial that [he] thought [Appellant] should take the plea[,]" and that even on the morning of trial, he "went back to [Appellant] again and reinforced [his] opinion that the plea was the best route." *Id.* at 18, 19.

Based on this testimony, the PCRA court disagreed with Appellant's claim that Attorney Johnson "gave him an unreasonably positive prognosis as

to his chances at trial." PCRA Court Finding of Fact, Discussion, and Order on Defendant's PCRA Petition, 3/22/22, at 4 (unnumbered). The court found that Appellant had been advised about the favorable plea agreement multiple times, and he had also been notified of the sentencing guidelines. *Id.* The PCRA court concluded that Appellant "was not interested in any plea that involved a jail sentence[,]" as Appellant had testified that he would lose his job if he went to jail. *Id.* at 5 (unnumbered); *see also* N.T. Trial at 54-55. The record supports the court's factual findings and credibility determinations. Based thereon, we discern no error in its conclusion that Attorney Johnson did not act ineffectively in advising Appellant regarding whether to plead guilty, and the ramifications of deciding to proceed to trial.

Finally, Appellant argues that his due process rights to a fair trial under the Pennsylvania and United States Constitutions were violated when the trial court failed to dismiss the entire jury panel after one potential juror, during jury selection, twice stated that she could not be fair and impartial because her husband had been killed by an impaired driver. This issue was previously litigated and rejected on direct appeal. *See Bowman*, 352 MDA 2020, unpublished memorandum at *14-18. Consequently, Appellant is ineligible for post-conviction relief on this claim. *See* 42 Pa.C.S. § 9543(a)(3) (stating

that, to be eligible for PCRA relief, the petitioner must prove the claim was not previously litigated or waived).[1]

Orders affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2023

---

[1] Appellant argues that our decision on direct appeal was erroneous. **See** Appellant's Brief at 44 n.8. However, "[i]t is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) (citations omitted). Appellant does not identify any intervening caselaw by our Supreme Court that would impact the validity of our prior decision in this case. As such, we are bound to uphold it.