J-A08023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ESAU HAHSON THOMAS :
:
Appellant : No. 369 EDA 2025

Appeal from the Judgment of Sentence Entered August 1, 2024
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000032-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 27, 2026**

Appellant, Esau Hahson Thomas, appeals from the judgment of sentence entered in the Court of Common Pleas of Northampton County following his conviction by a jury on one count of possession with the intent to deliver ("PWID") a controlled substance, two counts of possession of a controlled substance, and one count of possession of drug paraphernalia.[1] After our careful review, we affirm.

The relevant facts and procedural history are as follows: On March 14, 2023, the Commonwealth filed an Information charging Appellant with the aforementioned offenses, and on June 4, 2024, Appellant proceeded to a jury

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), (16), and (32), respectively.

trial.[2] Bethlehem Police Sergeant Blake Kuntz testified that, on November 3, 2022, he was working on a special operation involving the Bethlehem Police Department and the Pennsylvania State Police. N.T., 6/4/24, at 130. The operation's goal was to locate people with active warrants issued against them. *Id.*

During his shift, Bethlehem Police Detective Michael Mireski, who was familiar with Appellant, advised Sergeant Kuntz that he saw Appellant, who had an outstanding arrest warrant, driving in a white sedan in a certain vicinity of Bethlehem. *Id.* at 131. Accordingly, Sergeant Kuntz proceeded to the location, observed the white sedan, and effectuated a traffic stop. *Id.*

Appellant exited the vehicle, and other officers, including Detective Mireski, identified Appellant, who was taken into custody pursuant to the arrest warrant. *Id.* The police discovered marijuana on Appellant's person. *Id.* at 132. Two officers took custody of Appellant while Sergeant Kuntz proceeded to Appellant's last known address on Atlantic Street. *Id.* The police secured a search warrant for the home on Atlantic Street. *Id.* Upon arrival, Sergeant Kuntz notified the people inside of the residence that the police had a search warrant, and, after he secured the residence, his involvement with the matter concluded. *Id.* at 133.

---

[2] We note that, after an extensive colloquy, Appellant expressed his desire to proceed *pro se*, and the trial court appointed Brian Monahan, Esquire, as standby counsel.

Bethlehem Police Detective Patrick Thomas Maczko testified he is a member of the narcotics unit, and he was working undercover in plainclothes on November 3, 2022. *Id.* at 201. During his shift, he received a call from Detective Mireski, who was conducting surveillance of Appellant's residence on Atlantic Street. *Id.* Detective Mireski advised Detective Maczko that Appellant was leaving his residence in a white sedan, and he asked Detective Maczko to follow Appellant until a marked police car and uniformed officer could effectuate a traffic stop of Appellant. *Id.* at 202. After Sergeant Kuntz stopped Appellant's vehicle and approached the driver's side window, Detective Maczko approached the passenger side of the vehicle. *Id.* Detective Maczko saw "a plastic bag of marijuana sticking out of the side of [the front pocket of Appellant's] sweatshirt." *Id.* The detective advised the sergeant about the marijuana, and as Appellant was taken into custody, the detective "grabbed the bag out his sweatshirt." *Id.*

Detective Maczko testified he gave the bag of marijuana to Detective Mireski, and he then proceeded to Appellant's residence. *Id.* at 205. Detective Maczko testified he assisted in executing the search warrant. *Id.* In the kitchen, Detective Maczko discovered a digital scale and foil lined baggies, which are used in narcotics trafficking, as well as a handgun. *Id.* at 209. In the back mudroom, Detective Maczko discovered numerous boxes, and he found a bag containing a white, chalky substance, which he believed to be cocaine, in one of the boxes. *Id.* at 210.

Detective Maczko testified he saw a backpack hanging off a chair in the dining room or kitchen area; however, he neither seized nor searched the backpack. *Id.* at 215. However, he confirmed that photographs of the scene accurately depicted the backpack, as well as "the pound bag of marijuana inside the backpack." *Id.* Detective Maczko noted that, when the police removed the bag of marijuana from the backpack, the vacuum seal had already been broken. *Id.* He testified drug distributors often vacuum seal larger bags of marijuana to "keep it fresh." *Id.* He opined that the smaller amount of marijuana, which the detective seized from Appellant's front sweatshirt pocket during the traffic stop, came from the larger bag of marijuana found inside of the backpack at Appellant's residence. *Id.* at 217.

On cross-examination, Detective Maczko testified that he and other narcotics officers had been conducting surveillance of Appellant's house on Atlantic Street for months prior to his arrest. *Id.* at 224. When asked "are you sure [Appellant] lived there[,]" Detective Maczko replied, "[Appellant] came out of that house every…day I watched." *Id.* Detective Maczko indicated he was conducting surveillance of Appellant's residence during three controlled buys with the use of a confidential informant. N.T., 6/5/24, at 14.

Detective Maczko testified that Appellant was the target of the surveillance, and the confidential informant positively identified him from photographs, as well as reported that Appellant lived in the house. *Id.* at 16. Detective Maczko testified he conducted surveillance when the confidential

informant successfully purchased drugs from Appellant at his home on three separate occasions. *Id.* at 16, 30. Specifically, he testified that, during two of the controlled buys, he witnessed Appellant opening the back door of his house to allow the confidential informant to enter. *Id.* at 30, 49. He indicated he was no more than 150 feet from the door when he was conducting surveillance. *Id.* at 50.

Bethlehem Police Detective Michael Mireski testified he is a member of the narcotics unit. *Id.* at 69. He testified that, in March of 2022, he received a "crime stopper's tip" that Appellant was selling drugs. *Id.* at 70, 107. He testified that a confidential informant, who was "indoctrinated in the drug culture in the Lehigh Valley," gave the detective Appellant's address on Atlantic Street. *Id.* at 74. To verify the address, Detective Mireski conducted surveillance, as well as ran the license plates of the vehicles routinely parked at the house to determine the name of the occupants. *Id.* He noted that the address on Appellant's current driver's license is the subject house on Atlantic Street. *Id.* at 75. He testified that he oversaw the confidential informant and observed him/her conduct "at least half a dozen" controlled buys at the residence from March to November of 2022. *Id.* at 107. He testified that, during this time, he was aware that there was an outstanding arrest warrant for Appellant in Northampton County. *Id.* at 108.

As it relates to November 3, 2022, Detective Mireski confirmed he was conducting surveillance of Appellant's house when he observed Appellant

leaving in a white Kia sedan. *Id.* at 109. He immediately alerted Sergeant Kuntz and Detective Maczko. *Id.* at 110. He then followed the vehicle until Sergeant Kuntz stopped it. *Id.* After the marijuana was seized from Appellant's sweatshirt pocket, Detective Mireski field tested it and then secured a search warrant for Appellant's residence on Atlantic Street. *Id.*

Detective Mireski participated in the execution of the search warrant on November 3, 2022. He testified that he entered the home pursuant to the warrant, and he saw Dominique Hughes and a small child sitting in the living room. *Id.* at 76. The detective indicated that Ms. Hughes and the small child were often observed entering and exiting the house on Atlantic Street during the police's surveillance. *Id.* He noted that, prior to executing the search warrant, he had seen Appellant at the house "at least half a dozen times." *Id.* at 77.

Detective Mireski confirmed that a handgun was seized from the home during the search; however, Appellant was not charged with a firearm offense. *Id.* at 78. He testified that, during the search, he saw "an ID on the kitchen table that had [Appellant's] name on it. There were also documents behind in one of the cabinets that had [Appellant's] name on it." *Id.* at 81. He noted one of the pieces of identification was Appellant's expired driver's license. *Id.* It contained an expiration date of 10/31/19 with an address of Itaska Street in Bethlehem. *Id.* at 83. He noted Appellant's current driver's license was

found on the kitchen table. *Id.* Appellant's current driver's license had the home on Atlantic Street listed as Appellant's residence. *Id.*

Further, he testified that he found documents addressed to Appellant in the living room behind the area where the backpack, which contained a large bag of marijuana, was found. *Id.* at 84. Specifically, he seized a SelectQuote Life document with Appellant's name and his Atlantic Street address listed thereon. *Id.* The SelectQuote Life document was dated December 7, 2021. *Id.*

Detective Mireski testified he seized drug paraphernalia, including a grinder, rolling tray, and foiled line baggies. *Id.* at 81. He noted the baggies are often used by drug dealers to package illegal marijuana to make it appear to be "legal medicinal marijuana." *Id.* at 87. Regarding the white, chalky substance, Detective Mireski confirmed the police seized it from the back mudroom. *Id.* at 89. He indicated it was in a bag in a slower cooker sitting in a box. *Id.* Detective Mireski testified that he searched the backpack, which was in the dining room/kitchen area. *Id.* at 92. He found a large amount of marijuana in the backpack, as well as pills that tested positive for methamphetamine. *Id.* at 93.

On cross-examination, Detective Mireski testified the police seized a cell phone from Appellant's person pursuant to his arrest, and when the police executed a search warrant on the phone, they confirmed it was the telephone

number the confidential informant had used to contact Appellant. *Id.* at 126-27.

Pennsylvania State Police Trooper Stephen DeAngeles testified as an expert in narcotics investigations. *Id.* at 183. He testified that it is standard police practice to use confidential informants in drug cases, and it is common for the police to find multiple people in a residence when they execute a search warrant. *Id.* at 189. He noted that people found in the residence are not charged if there is no probable cause that they were involved with the trafficking of the drugs. *Id.* at 190.

Trooper DeAngeles noted that the large bag of marijuana found in the backpack weighed slightly less than a pound, and it is likely that the marijuana found on Appellant's person came from the large bag. *Id.* at 193. He testified that when a large marijuana bag is vacuum sealed it is indicative of someone selling the marijuana. *Id.* He opined that the large bag of marijuana was not for Appellant's personal use, but he possessed it with the intent of distributing it. *Id.* at 199-200. He noted that digital scales are used to weigh marijuana because if a drug dealer "merely eyeballs" the substance he could lose profit in selling it. *Id.* at 201. He testified that it is common for drug dealers to have firearms to protect their business, and grinders are used to grind marijuana buds to be used for smoking purposes. *Id.* at 198.

Trooper DeAngeles also testified it is common for drug dealers to deal in multiple substances. *Id.* at 204. Customers like "full service" from their

dealers. *Id.* Trooper DeAngeles noted that, from his training and experience, it is uncommon for drug dealers to carry their full supply of drugs on their person; but rather, they stash the drugs in areas where they have the ability to control it, such as their cars and homes. *Id.* at 206. He further noted it is common for drug dealers to use multiple cell phones. *Id.*

Gina Musante, a forensic scientist with the Pennsylvania State Police Crime Laboratory ("the lab"), testified as an expert witness. N.T., 6/4/24, at 168. She testified that she tested substances, which were given to the lab by the Bethlehem Police Department on November 3, 2022, and she generated two lab reports for the substances. *Id.* at 178-79. She confirmed the specimens and reports pertained to the instant case. *Id.* at 182.

Regarding the first lab report, which related to the "vegetable material" removed from Appellant's sweatshirt during the traffic stop, Ms. Musante testified that she analyzed the "vegetable material," which had a net weight of 14.86 grams. *Id.* at 182, 203. The THC concentration of the "vegetable material" was greater than .3 percent by weight, and she concluded it was marijuana, a schedule one drug. *Id.*

Regarding the second lab report, Ms. Musante testified four items, which were seized from Appellant's residence, were submitted: one envelope that had a plastic bag that contained two little bags inside. *Id.* She testified she analyzed the tablets, the chunky substance, and the "vegetable material" found inside these four items. *Id.* at 183. She testified the items contained

.46 grams of methamphetamine, which is a schedule two drug; .65 grams of Clonazepam, which is a schedule four drug; .31 grams of Oxycodone, which is a schedule two drug; 8.7 grams of cocaine, which is a schedule two drug; and 422.6 grams of marijuana with a THC concentration higher of .3 percent, which is a schedule one drug. *Id.* at 183-84.

Appellant offered no witnesses, and at the conclusion of the trial, the jury convicted Appellant of the offenses *supra.* On August 1, 2024, following a hearing, Appellant was sentenced to an aggregate of 46 months to 92 months in prison; each sentence was in the standard range. He filed a timely post-sentence motion on August 6, 2024, and on October 21, 2024, trial counsel filed a motion to withdraw his representation. On October 30, 2024, noting Appellant retained private counsel, Robert Saurman, Esquire, the trial court granted trial counsel's motion to withdraw. On December 30, 2024, the trial court denied Appellant's post-sentence motion, and this appeal followed.[3] On February 6, 2025, the trial court directed Appellant to file a Pa.R.A.P.

_____

[3] We note that, although the trial court's order denying Appellant's post-sentence motion was docketed on December 30, 2024, the certified docket entries reveal notice of the order was not provided to Appellant or Attorney Sauerman until January 16, 2025. Since the date of entry of an order shall be the day the clerk of court mails or delivers copies of the order to the parties, we shall deem the date of entry of the order as January 15, 2025. *See* Pa.R.A.P. 108. Accordingly, Appellant's notice of appeal, which was filed on January 31, 2025, is timely.

1925(b) Statement,[4] and Appellant complied. The trial court filed a responsive Rule 1925(a) opinion.

On appeal, Appellant presents the following in his "Statement of the Questions Presented" (verbatim):

A. Whether the trial court erred and abused its discretion by finding that the verdict of the jury was supported by adequate weight and sufficiency?

B. Whether the trial court erred and abused its discretion by continuing with the trial after it became apparent that [Appellant] was not provided with all necessary discovery before trial?

C. Whether the trial court erred and abused its discretion by continuing with the trial when it because [*sic*] apparent that [Appellant] was unable to call a necessary witness because he was housed at a correctional facility and did not have access to communication with his witness?

Appellant's Brief at 6 (suggested answers omitted).

In his first issue, Appellant avers the trial court abused its discretion by finding that the jury's verdict was supported by adequate weight and sufficiency. Initially, we note that Appellant's statement of the issue conflates two distinct claims. **See Commonwealth v. Holmes**, 327 A.3d 307 (Pa.Super. 2024) (holding sufficiency of the evidence and weight of the evidence are distinct concepts).

As it applies to Appellant's challenge to the weight of the evidence, Appellant has not developed a claim related thereto in any meaningful way in

_____

[4] The trial court's order complies with Pa.R.A.P. 1925(b)(3).

the "Summary of Argument" or "Argument" portion of his brief. Accordingly, Appellant has waived his challenge to the weight of the evidence. **See id.** (deeming waived the appellant's claim where the appellant did not develop the claim in any meaningful way).

As it applies to Appellant's challenge to the sufficiency of the evidence, we initially note that, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." **Commonwealth v. Stiles**, 143 A.3d 968, 982 (Pa.Super. 2016) (quotation marks and quotation omitted). "Such specificity is of particular importance in cases where, as here, Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Commonwealth v. Ellison**, 213 A.3d 312, 321 (Pa.Super. 2019) (quotation marks and quotation omitted). "Therefore, when an appellant's [Rule] 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient,…the sufficiency issue is waived on appeal." **Id**.

Instantly, Appellant's court-ordered Rule 1925(b) statement presented his sufficiency issue as follows: "The trial court erred and abused its discretion by finding that the verdict of the jury was supported by adequate weight and sufficiency." Appellant's Rule 1925(b) Statement, filed 3/3/25, at 1. As is evident, Appellant's Rule 1925(b) Statement neither identified precisely which

crime or elements he was challenging on appeal. *See Commonwealth v. Arnold*, 284 A.3d 1262 (Pa.Super. 2022) (holding a Rule 1925(b) statement that is too vague can result in waiver of the issue on appeal).

Moreover, we note that, in his appellate brief, Appellant sets forth the issue in the same vague manner in his "Statement of the Questions Presented." Additionally, aside from providing a single relevant citation for this Court's standard of review, Appellant has included no relevant case or statutory citations in the "Summary of Argument" or "Argument" portion of his brief for his sufficiency claim. While he has discussed facts in the light most favorable to him and refers generally to "constructive possession," he has not related these facts to relevant legal principles or citations to the record.

It is axiomatic that the argument portion of an appellate brief must be developed with citation to the record and relevant authority. *See* Pa.R.A.P. 2119(a)-(c). "This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority. Failure to cite relevant legal authority constitutes waiver of the claim on appeal." *In re Estate of Whitley*, 50 A.3d 203, 209 (Pa.Super. 2012). For the aforementioned reasons, we conclude Appellant has waived his challenge to the sufficiency of the evidence. *See id. See also Stiles*, *supra*.

In any event, we note that Appellant admits "there is no question that the marijuana found on [Appellant's] person during the traffic stop was in his

possession[.]" Appellant's Brief at 12. To the extent Appellant appears to be challenging whether the Commonwealth proved he had constructive possession of the drugs seized by the police from his residence, we note that, in addressing the issue in its opinion denying Appellant's post-sentence motion, the trial court specifically indicated the following:

> Pennsylvania law is clear regarding constructive possession. The Superior Court of Pennsylvania has stated: "We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances." **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super. 2012).
>
> The test for sufficiency of the evidence requires that the evidence admitted at trial, along with all reasonable inferences drawn from it, when viewed in the light most favorable to the verdict winner, must be sufficient to support all elements of the offense. **Commonwealth v. Miyares**, 320 A.3d 740, 742 (Pa.Super. 2024)[.]
>
> At trial, Detective Mireski…testified that during the search of [Appellant's] residence, [Appellant's] driver's license: "[W]as on the kitchen table that was next to the backpack that was found with the marijuana and the methamphetamine." N.T., 6/5/24, at 148. Also, Detective Maczko…described the discovery of the evidence, stating:
>
>> So, right as you step into the kitchen there is a set of cabinets on your right-hand side. The upper cabinets, I opened up the upper cabinets on the lower shelf to the right. I located some paraphernalia, which were bag—same sandwich-styled bags. And a box of them and a digital scale, which is indicative of narcotics trafficking.
>
> N.T., 6/4/24, at 209.
>
> Further, Detective Mireski witnessed [Appellant] completing independent drug transactions at this residence at least "half a dozen times, if not more." N.T., 6/5/24, at 107-08.

- 14 -

Based on the totality of the circumstance standard, there was sufficient evidence for the jury to convict [Appellant] of possessing the drugs in question. With regard to the intent to deliver charge, the quantity of marijuana leads to the reasonable inference that [Appellant] constructively possessed it with the intent to deliver. Sufficiency of the evidence was also established with the search revealing bags for packaging and a digital scale. Also, based on the proximity of [Appellant's] driver's license, there was sufficient evidence for constructive possession of the methamphetamine, cocaine, and drug paraphernalia.

Trial Court Opinion, filed 12/20/21, at 2-3.

We agree with the trial court's sound reasoning in this regard, and, accordingly, to the extent Appellant did not waive his sufficiency claim, we find the issue is meritless.

In his next issue, Appellant avers the Commonwealth committed a **Brady**[5] violation by failing to provide him with the police bodycam video footage from his arrest and the search of his residence. He claims that, once it became apparent to the trial court that a **Brady** violation occurred, the trial court erred in "continuing with the trial." Appellant's Brief at 14. Appellant alleges that the trial court should have declared a mistrial, and since the trial court failed to do so, Appellant is entitled to a new trial. **See id.** at 16.

Our Supreme Court has relevantly indicated the following:

The law governing **Brady** claims is well settled:

In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt

_____

[5] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's ***Brady*** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.

***Commonwealth v. Lambert***, 584 Pa. 461, 884 A.2d 848, 853-54 (2005) (internal citations and quotations omitted). The prosecution's duty under ***Brady*** is limited as the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. Thus, there are three necessary components that demonstrate a violation of the ***Brady*** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

***Commonwealth v. Conforti***, \_\_\_ Pa. \_\_\_, 303 A.3d 715, 725-26 (2023)

(some quotation marks and quotations omitted).

Here, during trial, the relevant exchange occurred outside of the presence of the jury:[6]

[APPELLANT]: Your Honor, yes. I need whatever information [the ADA] has that he hasn't presented to me. Because I'm, like, in the wind right now.

[ADA]: Your Honor, I am not going to go through this. Every time he said he didn't get discovery, he's had it before, and he didn't file a motion. So, I am not going to have him sit here and say—

_____

[6] We note that, in his appellate brief, Appellant avers generally that "[d]uring the trial, time was taken to address [Appellant's] claims that he did not receive discovery." Appellant's Brief at 14. However, Appellant fails to cite to the record or provide this Court with further guidance regarding where he preserved his ***Brady*** claim. In any event, the trial court has provided the citations to the record, and, thus, we shall proceed on this basis.

- 16 -

THE COURT: You said you also provided him with—

[ADA]: I provided all of the papers today and all copies of the photos. Today. Because he complained about it yesterday, even though I checked, and he had gotten it previously.

[APPELLANT]: Your Honor—

[ADA]: But it's inappropriate for him to say he has not gotten it.

THE COURT: Why don't we settle this once and for all. Do you have the clerk available?

[ADA]: Probably. She should be here.

[APPELLANT]: He's presenting videos that—

THE COURT: One second.

[ADA]: She's coming. She has to get all her stuff.

THE COURT: I'm sorry?

[ADA]: I said she is coming, but she is in another courtroom working and she has to get the documents. So, she'll be here in a couple of minutes.

THE COURT: Okay.

[ADA]: And, Your Honor, I just want to be very clear. I was here last time, he didn't ask me for more discovery. Judge Baratta was here the time before that, he did not ask for discovery. He did not file for discovery.

THE COURT: I understand your argument.

[ADA]: Well, it's not really an argument. It's a fact.

THE COURT: Whatever it is, I understand it. But, I just want to—so this doesn't keep occurring, it's my way—and I'm the one that makes these decisions—it's my way of trying to put this to rest once and for all. I mean, if you're telling me—you're representing to me they supplied him with discovery, whether or not he did the informal request to begin with and then a motion later on, or even without those two things if it was supplied, then I would like to hear it.

[ADA]: Okay.

N.T., 6/4/24, at 152-54.

The trial court then heard from Anna Thompson, who works for the District Attorney's Office. Ms. Thompson confirmed she mailed discovery to Appellant's Atlantic Street address. *Id.* at 157. Specifically, she mailed discovery to Appellant on May 16, 2023, August 16, 2023, and September 21, 2023. *Id.* at 156-57. She testified that, on May 16, 2023, she mailed the criminal information, criminal history, applicable sentencing guidelines, criminal complaint, PennDOT driver's history, and magisterial district justice file. *Id.* at 156. On August 16, 2023, she mailed the lab report, which was provided by the Pennsylvania State Police Lab. *Id.* On September 21, 2023, she mailed three reports authored by the narcotic unit detectives, as well as a USB drive, which contained 169 photographs. *Id.*

As to whether the USB drive contained police bodycam video footage, the following exchange occurred:

(Redirect Examination by ADA)

Q. Is it common to also include the videos with the photographs? Is that what we normally do?

A. Yes. On the same USB drive.

[ADA]: I have nothing else.

THE COURT: Okay. Recross? She said there were videos sent.

(Recross Examination by Appellant)

Q. Ms. Thompson, I just asked you to tell the Court how many videos have you sent. How many videos are on that paper?

A. There is nothing that says videos on here. If there were videos included on this USB, I wouldn't have known—

Q. You have 160-some photos?

A. 169, yes.

Q. And what else does it say on there?

A. Three reports, as well as duplicative copies of investigative reports that were previously provided.

Q. So, the videos would make that report incomplete?

A. There were not videos included on this letter.

[APPELLANT]: All right. Thank you.

THE COURT: Is it the Commonwealth's position that the videos were on the USB drive?

[ADA]: I have no idea—because, again, this was not myself who did it. What I am saying is normally when we provide a USB, everything that is provided, which would include videos, would also be with the photographs. And that's what I asked her, if that is a normal procedure. And when you give a discovery letter, it's what you say—

THE COURT: Okay. You said, is that the normal procedure?

[ADA]: Yes. That's all I have, Judge.

THE COURT: All right. Are you moving for the admission of that document?

[ADA]: Yes. Do you want us to make copies, Your Honor?

THE COURT: No. You can hand that to me. Any objection to this being admitted?

[APPELLANT]: Yes. Because it's [an] incomplete [list].

THE COURT: The objection is overruled. I'm going to admit it for purposes of reviewing this issue, [Appellant].

Who is your next witness?

[ADA]: We're going to go with the scientist next so we can get her out of here, and then go with Detective Maczko.

THE COURT: Okay. And will there be a video with the detective?

[ADA]: No. I believe this is the extent of the video we're going to play at all.

THE COURT: It was just that one video [of Appellant's arrest]?

[ADA]: Yes.

THE COURT: Okay. All right. You may step down. Thank you for coming.

- 19 -

(The jury enters the courtroom.)

THE COURT: Please be seated. I want to thank you for your patience. There was a legal matter that I had to take care of. That's why the break was a little longer.

We're ready for your next witness, [ADA].

*Id.* at 160-63.

In its opinion, the trial court found there was no suppression of the videos by the Commonwealth. Trial Court Opinion, filed 12/30/21, at 4. Further, the trial court found that the police bodycam video footage was not favorable to the accused since it was not exculpatory or impeached a Commonwealth witness. *Id.* Appellant has not explained how the trial court erred in this regard.

In any event, we note that Appellant did not request a mistrial as it relates to the alleged *Brady* violation.

Pennsylvania Rule of Criminal Procedure 605 provides, in pertinent part:

**Rule 605. Mistrial**

***

(B) When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial court may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B) (bold in original). Pursuant to this rule, a motion for a mistrial is timely if it is "made when the alleged prejudicial event occurs." *Commonwealth v. Boring*, 684 A.2d 561, 568 (Pa.Super. 1996). "When an

event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." *Id.*

An allegedly prejudicial event at trial requires a prompt objection from the defense and a request for a mistrial to preserve the issue for appellate review. *Commonwealth v. Rhone*, 619 A.2d 1080 (Pa.Super. 1993). If a defendant fails to move for a mistrial contemporaneously with the allegedly prejudicial incident at trial, "any potential claim is waived and the defendant is entitled to relief only if the trial judge finds a new trial to be a 'manifest necessity.'" *Commonwealth v. Montalvo*, 641 A.2d 1176, 1188 (Pa.Super. 1994). "Reviewing courts use no mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. Rather, '…varying and often unique situations aris[e] during the course of a criminal trial…[and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated[.]'" *Commonwealth v. Leister*, 712 A.2d 332, 335 (Pa.Super. 1998) (quotation omitted).

In the case *sub judice*, Appellant did not request a mistrial in a timely fashion. Further, he has not averred on appeal that there was a "manifest necessity" for the trial court to declare a mistrial for any discovery violation. Accordingly, we conclude Appellant has not preserved his claim that the trial court erred in failing to grant him a mistrial due to an alleged *Brady* violation. *See Leister*, *supra*; *Boring*, *supra*. Finally, we note Appellant did not request a continuance to examine the police bodycam video footage.

***Commonwealth v. Kennedy***, 598 Pa. 621, 959 A.2d 916 (2008) (holding the defendant's failure to request a continuance waives the issue on appeal).

In his final issue, Appellant avers the trial court erred in continuing with the trial when it became apparent that Appellant was unable to call a necessary witness, Dominique Hughes. Appellant claims he could not contact Ms. Hughes to make her available for trial because he was in "lock-down[,] which prevented him from having any phone contact with the outside world." Appellant's Brief at 17.

Initially, we note the following:

> Appellate review of a trial court's continuance decision is deferential. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

***Commonwealth v. Brooks***, 628 Pa. 524, 104 A.3d 466 (2014) (quotations marks, quotation, and citation omitted).

Regarding continuances in criminal cases, Pennsylvania Rule of Criminal Procedure 106 provides, in pertinent part:

> (A) The court or issuing authority may, in the interests of justice, grant a continuance, on its own motion, or on the motion of either party.
>
> ***
>
> (D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding. A later motion shall be entertained only when the

opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106(A), (D).

This Court has observed that trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. However, the trial court exceeds the bounds of its discretion when it denies a continuance on the basis of an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. Accordingly, we must examine the reasons presented to the trial court for requesting the continuance, as well as the trial court's reasons for denying the request.

*Commonwealth v. Norton*, 144 A.3d 139, 143 (Pa.Super. 2016) (quotation marks and quotations omitted).

When deciding a motion for a continuance to secure a witness, the trial court is guided by the following factors:

(1) the necessity of the witness to strengthen the [requesting party's] case; (2) the essentiality of the witness to the [party's case]; (3) the diligence exercised to procure his [or her] presence at trial; (4) the facts to which he [or she] could testify; and (5) the likelihood that he [or she] could be produced at the next term of court.

*Id.* at 143-44 (quotation omitted).

In the case *sub judice*, prior to the Commonwealth presenting its final witness and the court breaking for lunch, the trial court advised Appellant that he should be prepared to present his witnesses during the afternoon. N.T., 6/5/24, at 129. Appellant informed the trial court that he wanted to call Ms. Hughes as a witness; however, because of his prior disruptive behavior, he

had no phone privileges to contact her. *Id.* The trial court asked Appellant if standby counsel had contacted any witnesses, and, in response, Appellant indicated he could give standby counsel Ms. Hughes' phone number. *Id.* at 130. However, Appellant indicated Ms. Hughes was scheduled to work until 4:30 p.m. *Id.* The trial court advised Appellant that Ms. Hughes needed to be present in the courtroom during the afternoon to testify. *Id.*

The following relevant exchange then occurred:

[APPELLANT]: But, Your Honor, the—the prosecution has ample amount of time to have ample amount of witnesses. I only have one witness that may take 15, 20 minutes.

THE COURT: We continued the case [previously]. I don't want to argue with you, [Appellant]….You've been on notice that this case was starting this week. And plans could have been made. I'm going to ask you again to give [standby counsel] the phone number and try your best to get her here today.

[APPELLANT]: I will, Judge, but—

THE COURT: As part of the process of selecting this jury, I had to question them on hardships. And I was told that this case would go no longer than two days. I told you. You knew this trial date was coming this week. She could have been waiting to be available.

Please give the phone number to [standby counsel]. Get the phone number and try to reach Ms. Hughes. All right. I will see everybody back [after lunch].

THE COURT: So, you wanted to make a record while [Appellant] is here. Go ahead.

[ADA]: I would ask for an offer of proof on Ms. Hughes. Depending on what she says, she might be entitled to counsel. Because I've run into that problem before.

\*\*\*

THE COURT: [Appellant], what would Ms. Hughes testify to if she came to testify?

[APPELLANT]: She would testify to the events that happened in her home.

THE COURT: To what?

[APPELLANT]: She would testify to the events that happened in her home.

THE COURT: What events?

[APPELLANT]: I can't disclose that right this second, Your Honor.

THE COURT: Would that incriminate her? She may be incriminating herself?

[APPELLANT]: I am pretty sure it won't incriminate her.

THE COURT: Okay. Well, if she can be here, I will accept her testimony; otherwise, let's proceed.

[ADA]: Yes.

[STANDBY COUNSEL]: I didn't speak with [Appellant] and let him know of the circumstances….After I left here, I went to Court Administration and used the Deputy Court Administrator's telephone to call and left a specific message to call back that number. She did not answer the phone.

[APPELLANT]: She's at work….Did you leave a message?

[STANDBY COUNSEL]: I left a specific message to call that she was needed in court at one o'clock to testify on your behalf.

[APPELLANT]: She works with special needs people.

THE COURT: Does she have a cell phone?

[APPELLANT]: Yes. But, the cellphone and the service where she's at—because she works in New Jersey, and the location has a dead point of service.

THE COURT: The case was scheduled for trial on Monday, and her availability should have been general. That's just the way it works.

[APPELLANT]: I understand that, sir. But due to my situation, I can never make one call. You can ask the county jail.

THE COURT: I know. But again—

[APPELLANT]: I couldn't call.

THE COURT: --your situation was out of my control as well. I mean, she should have been on a state of readiness as far as

being a possible witness if you did tell her to be here.   We're going to proceed.

[APPELLANT]: Your Honor, are you not going to allow me to have my witness here?

THE COURT: Say that again.

[APPELLANT]: Are you not going to allow me to have my witness here?

THE COURT: I didn't say I'm not going to allow you to have your witness here.  She's allowed to be here. She's not here.

[APPELLANT]: She wasn't informed until 10, 15 minutes ago to be here.

THE COURT: That is something that is out of my control….This was scheduled to go for trial this Monday….There was enough opportunity since—I am even going to limit it to the last time we were here.  There was enough opportunity for you to have a plan in place….There was enough time and opportunity for you to have her available for trial this week. Whether it was Monday, Tuesday, or Wednesday.

[APPELLANT]: I am just asking for a witness, Judge. Like, you gave the prosecution ample amount of witnesses.

THE COURT: I didn't give them anything.  I didn't tell them who to call. I didn't give the prosecution anything. That is not my role here.  If [the ADA] chooses not to call the next witness after this, that's up to him….So whether it's for the defense or the prosecution, the witnesses were supposed to be available for trial this week. It's as simple as that….

[APPELLANT]: She's going to testify to the events that happened in the house, what the officers said, what was stated, his demeanor as he approached the house, and the narrative of what he said and the reason why Ms. Hughes was able to leave.

THE COURT: All right.

[APPELLANT]: So, she has valuable testimony.

THE COURT: Quite frankly, I will have to restate it again.  We were scheduled for trial June 3. We had a mistrial because of you leaving the courthouse.

[APPELLANT]: I'm—

THE COURT: You were found in contempt—let me finish—and we had to pick a second—we had to pull up a second jury panel to

- 26 -

pick a jury. So, this case is going to proceed with the rest of this testimony.

*Id.* at 129-37.

In explaining the denial of Appellant's request for a continuance, the trial court indicated that Appellant did not exercise due diligence in procuring Ms. Hughes' presence at trial. Trial Court Opinion, filed 12/30/21, at 5. Specifically, the trial court found Appellant "was provided ample opportunities to arrange for his witness to testify." *Id.* The trial court noted that Appellant could have provided standby counsel with Ms. Hughes' telephone number prior to the day of trial. *See id.*

Moreover, the trial court explained:

> [Appellant] states that he was unable to reach out to Ms. Hughes to notify her as to when and where to appear to testify. [Appellant's] argument omits the reason for this difficulty. First, [Appellant] was placed in custody after becoming disruptive and subsequently being held in contempt during the first jury selection on June 3, 2024. N.T., 6/4/24, at 5. At a hearing addressing this issue, Lieutenant Justin Washousky of the Northampton County Sheriff's Department testified that [Appellant] fled the courtroom and requested medical attention upon being apprehended by deputy sheriffs. *Id.* at 8. [Appellant] was subsequently taken by EMS to a local hospital. *Id.* Lieutenant Washousky further testified that [Appellant] allegedly assaulted him at the hospital. *Id.* at 11. [Appellant] was subsequently placed in custody and transported to Northampton County Prison.
>
> Further, at trial, the court granted [Appellant] multiple opportunities to call his witness on June 5, 2024. Specifically, [Appellant] was advised to provide his standby counsel with Ms. Hughes' phone number. N.T., 6/5/24, at 130. The trial was delayed [so that] standby counsel [could] continue to call Ms. Hughes. [Appellant] had weeks to plan and arrange for his witness to testify and failed to do so.

Trial Court Opinion, filed 12/30/21, at 5-6.

The record supports the trial court's sound reasoning and, in light of our deferential standard of review, we conclude the trial court did not abuse its discretion. ***See Norton***, ***supra*** (finding no error in the trial court denying the Commonwealth's request for a continuance when the Commonwealth failed to exercise due diligence in attempting to procure a witness for trial).

For all of the foregoing reasons, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/27/2026